Kelley A. Cornish (KC/0754)
Elizabeth R. McColm (EM/8532)
Ross B. Rosenfelt (RR/1911)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| THE PENN TRAFFIC COMPANY, et al., | Case No. 03-22945 (ASH) |
| Debtors. | (Jointly Administered) |

### FIRST AMENDED JOINT PLAN OF REORGANIZATION
### OF THE PENN TRAFFIC COMPANY AND ITS AFFILIATED DEBTORS AND
### DEBTORS IN POSSESSION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Dated: February 4, 2005

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

ARTICLE I - DEFINITIONS AND INTERPRETATION ................................................... 2
    A. Definitions ................................................................................................................. 2
    B. Interpretation ........................................................................................................... 12
    C. Computation of Time ............................................................................................... 13

ARTICLE II - CLASSIFICATION AND TREATMENT OF CLAIMS AND
            INTERESTS ......................................................................................... 13
    A. Unclassified Claims ................................................................................................. 13
        2.1.      Administrative Claims ................................................................... 13
        2.2.      Senior Note Trustee Claim ............................................................ 14
        2.3.      Priority Tax Claims ....................................................................... 14
        2.4.      DIP Facility Claim ........................................................................ 14
        2.5.      Post-Petition Trade Lien Claims ................................................... 14
    B. Classified Claims and Interests ............................................................................... 15
        2.6.      Class 1 -- Priority Non-Tax Claims .............................................. 15
        2.7.      Class 2 -- Other Secured Claims ................................................... 15
        2.8.      Class 3 -- Unsecured Claims ......................................................... 16
        2.9.      Class 4 -- Convenience Claims ..................................................... 16
        2.10.    Class 5 -- Intercompany Claims .................................................... 17
        2.11.    Class 6 -- Common Stock Claims and Interests ........................... 17

ARTICLE III - TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
            LEASES ................................................................................................ 17
        3.1.      Rejected Contracts and Leases ...................................................... 17
        3.2.      Assumed Contracts and Leases ...................................................... 17
        3.3.      Miscellaneous ................................................................................ 18
        3.4.      Payments Related to Assumption of Executory Contracts and
                Unexpired Leases ......................................................................... 18
        3.5.      Post-Petition Contracts and Leases ............................................... 19
        3.6.      Rejection Damages Bar Date .......................................................... 19

ARTICLE IV - CONDITIONS PRECEDENT ................................................................... 19
        4.1.      Conditions to Occurrence of Effective Date ................................. 19
        4.2.      Waiver of Conditions to Consummation ....................................... 19
        4.3.      Non-Consensual Confirmation ...................................................... 19

ARTICLE V - IMPLEMENTATION OF PLAN ................................................................ 20
        5.1.      Pre-Effective Date Management and Operation of Debtors ......... 20
        5.2.      Post-Effective Date Committee; Dissolution of Committee ......... 20
        5.3.      Pre-Effective Date Injunctions or Stays ........................................ 21

Doc #:NY6:874288.7

| | | |
|---|---|---|
| 5.4. | Merger of Certain Debtors | 21 |
| 5.5. | Amended Certificates of Incorporation and Amended Bylaws | 21 |
| 5.6. | Post-Effective Date Management and Operation of Reorganized Debtors | 22 |
| 5.7. | Exit Financing Facility | 22 |
| 5.8. | Sale Leaseback Transaction | 22 |
| 5.9. | Issuance of New Penn Traffic Common Shares | 22 |
| 5.10. | Transfer of Intercompany Claims | 22 |
| 5.11. | Management Stock Incentive Program | 22 |
| 5.12. | Effectuating Documents; Further Transactions | 22 |
| 5.13. | Exemption From Certain Transfer and Other Taxes | 23 |
| 5.14. | Continuation of Penn Traffic's Pension Plans | 23 |
| 5.15. | Employment, Retirement, and Incentive Compensation Plans and Programs | 24 |
| 5.16. | Substantive Consolidation of the Debtors | 24 |
| 5.17. | Post-Effective Date Trade Lien Program; Creditor Subordination Provision | 24 |
| 5.18. | Cancellation of Existing Securities and Agreements | 25 |

ARTICLE VI - DISTRIBUTIONS AND CLAIMS ALLOWANCE ... 25
| | | |
|---|---|---|
| 6.1. | Cash Distributions | 25 |
| 6.2. | Distributions to Holders of Allowed Unsecured Claims | 25 |
| 6.3. | Miscellaneous Distribution Provisions | 27 |
| 6.4. | Procedure For Determination of Claims and Interests | 29 |

ARTICLE VII - PENN TRAFFIC CREDITOR TRUST ... 30
| | | |
|---|---|---|
| 7.1. | Appointment of Trustee | 30 |
| 7.2. | Transfer of Trust Assets to the Penn Traffic Creditor Trust | 30 |
| 7.3. | The Penn Traffic Creditor Trust. | 31 |
| 7.4. | The Trust Advisory Board. | 33 |
| 7.5. | Distributions of Trust Recoveries | 34 |

ARTICLE VIII - EFFECT OF THIS PLAN ON CLAIMS AND INTERESTS ... 34
| | | |
|---|---|---|
| 8.1. | Revesting of Assets | 34 |
| 8.2. | Discharge of Claims and Termination of Interests | 35 |
| **8.3.** | **Injunctions** | 35 |
| **8.4.** | **Limitation of Liability** | 36 |
| **8.5.** | **Releases** | 36 |
| **8.6.** | **Retention and Enforcement, and Release, Of Causes Of Action** | 38 |
| **8.7.** | **Exclusions and Limitations on Exculpation, Indemnification, and Releases** | 38 |

ARTICLE IX - MISCELLANEOUS PROVISIONS ... 38
| | | |
|---|---|---|
| 9.1. | Retention of Jurisdiction | 38 |
| 9.2. | Terms Binding | 40 |
| 9.3. | Successors and Assigns | 40 |
| 9.4. | Confirmation Order and Plan Control | 40 |
| 9.5. | Governing Law | 40 |

9.6.   Severability ................................................................................................ 40

9.7.   Incorporation by Reference ...................................................................... 41

9.8.   Modifications to this Plan ......................................................................... 41

9.9.   Revocation, Withdrawal or Non-Consummation ..................................... 41

9.10.  Notice ........................................................................................................ 41

Doc #:NY6:874288.7

The Penn Traffic Company ("Penn Traffic"), together with its direct and indirect subsidiaries, Dairy Dell, Inc., Penny Curtiss Baking Company, Inc., Big M Supermarkets, Inc., Sunrise Properties, Inc., Pennway Express, Inc., Big Bear Distribution Company, Bradford Supermarkets, Inc., P&C Food Markets, Inc. of Vermont, Abbott Realty Corporation, Commander Foods, Inc., P.T. Development LLC, and PT Fayettville/Utica, LLC, each a debtor and debtor-in-possession herein (collectively, the "Debtors"), hereby propose the following First Amended Joint Plan of Reorganization (the "Plan").

## INTRODUCTION

In general, this Plan provides for the substantive consolidation of all of the Debtors for voting and distribution purposes only, and provides for the Debtors' reorganization pursuant to the terms of this Plan. This Plan contemplates the payment in full in cash of all administrative claims and priority claims against the Debtors, and the repayment in full in cash of outstanding amounts under the Debtors' post-petition financing facility. Furthermore, this Plan provides for the treatment of allowed claims against, and interests in, the Debtors as follows:

- With respect to each holder of an allowed unsecured claim, distribution of its pro rata share of 100% of the newly issued common stock of Reorganized Penn Traffic issued and distributed pursuant to Sections 5.9. and 6.2. of this Plan, subject to dilution in respect of new common stock that may be issued to management of Reorganized Penn Traffic; and

- No distributions on account of the Debtors' issued and outstanding common stock, including claims arising out of or with respect to such common stock interests.

Reference is made to the First Amended Disclosure Statement accompanying this Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, properties, results of operations, and projections for future operations and risk factors, together with a summary and analysis of this Plan. All creditors entitled to vote on this Plan are encouraged to consult the First Amended Disclosure Statement and to read this Plan carefully before voting to accept or reject this Plan.

NO SOLICITATION MATERIALS, OTHER THAN THE FIRST AMENDED DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

# ARTICLE I

## DEFINITIONS AND INTERPRETATION

    **A.**    **Definitions**. The following terms (which appear in this Plan as capitalized terms) shall have the meanings set forth below. A term used in this Plan and not defined in this Plan but that is defined in the Code has the meaning set forth in the Code.

    1.1.    "Administrative Claim" means a Claim to the extent that it is of the kind described in Section 503(b) of the Code and is entitled to priority under Section 507(a)(1) or 507(b) of the Code, including, without limitation, (a) any actual and necessary expenses of preserving the Estate, (b) any actual and necessary expenses of operating the business of the Debtors, (c) any actual indebtedness or obligations incurred or assumed by the Debtors during the pendency of the Cases in connection with the conduct of their business, (d) any actual expenses necessary or appropriate to facilitate or effectuate this Plan, (e) any amount required to be paid under Section 365(b)(1) of the Code in connection with the assumption of executory contacts or unexpired leases, (f) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under Sections 330(a), 331 or 503(b)(2), (3), (4) or (5) of the Code, (g) claims for reclamation allowed in accordance with Section 546(c)(2) of the Bankruptcy Code and the Order Under 11 U.S.C. §§ 105(a), 503(b) and 546(c)(2) Establishing Procedure for Treatment of Reclamation Claims dated July 15, 2003, as amended and supplemented, (h) the KZCS Success Fee, the PJSC Reorganization Fee, the Demme Success Bonus and the PBGC Allowed Administrative Claim, and (i) all fees and charges payable pursuant to Section 1930 of title 28 of the United States Code.

    1.2.    "Allowed Claim" means, with reference to any Claim, (a) any Claim against the Debtors which has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim which is not a Disputed Claim, or (d) any Claim the amount or existence of which, if disputed, (i) has been determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, or (ii) has been allowed by Final Order of the Bankruptcy Court; provided, however, that any Claims allowed solely for the purpose of voting to accept the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.

    1.3.    "Amended Bylaws" has the meaning ascribed in Section 5.5. of this Plan.

    1.4.    "Amended Certificates of Incorporation" has the meaning ascribed in Section 5.5. of this Plan.

    1.5.    "Assets" means all assets of the Debtors or the Reorganized Debtors, as the case may be, of any nature whatsoever, including, without limitation, property of the Estate pursuant to Section 541 of the Code, Cash, Causes of Action, claims of right, interests and property, real and personal, tangible and intangible, but excluding all Claims waived or released pursuant to this Plan or the Confirmation Order.

1.6.    "Ballot" means the ballot for voting to accept or reject this Plan distributed by the Debtors to all holders of impaired Claims entitled to vote on this Plan.

1.7.    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York in which the Cases were filed or any other court with jurisdiction over the Cases.

1.8.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the local rules and standing orders of the Bankruptcy Court, as amended from time to time to the extent applicable to the Cases.

1.9.    "Bar Date" means the dates by which the Bankruptcy Court ordered that proof of certain claims be filed in the Cases.

1.10.    "Blairsville Property Claim" means the amounts due and owing by the Debtors under the Blairsville Property Mortgage Documents.

1.11.    "Blairsville Property Mortgage Documents" means, collectively:  (i) that certain "Promissory Note" dated April 22, 1996, in the initial principal amount of $1,840,000; (ii) that certain "Open-End Mortgage and Security Agreement and Fixture Financing Statement with Assignment of Leases and Rents," dated April 1, 1996 and recorded in Book 450; Page 1056, Clairon County P.A. Recorded of Deed; and (iii) all other "Loan Documents" as defined in the foregoing Open-End Mortgage and Security Agreement and Fixture Financing Statement with Assignment of Leases and Rents, all of which were originally entered into by and between The Penn Traffic Company and American Enterprise Life Insurance Company.

1.12.    "Business Day" means any day other than a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

1.13.    "Cases" means the reorganization proceedings of the Debtors under chapter 11 of the Code, jointly administered as Case Nos. 03-22945 (ASH) through 03-22952 (ASH), 03-22954 (ASH) through 03-22957 (ASH), and 03-20312 (ASH).

1.14.    "Cash" means cash and cash equivalents, such as bank deposits, checks and other similar items or instruments denominated in legal tender of the United States of America.

1.15.    "Cash Balance Pension Plan" means the Penn Traffic Company Cash Balance Pension Plan, a defined benefit pension plan under ERISA.

1.16.    "Causes of Action" means any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

3

1.17. "Claim" means "claim" as defined in Section 101(5) of the Code, as supplemented by Section 102(2) of the Code, against any of the Debtors, whether or not asserted.

1.18. "Claimholder" means a holder of a Claim.

1.19. "Clarion Property Claim" means the amounts due and owing by the Debtors under the Clarion Property Mortgage Documents.

1.20. "Clarion Property Mortgage Documents" means, collectively: (i) that certain "Promissory Note" dated April 22, 1996, in the initial principal amount of $3,000,000; (ii) that certain "Open-End Mortgage and Security Agreement and Fixture Financing Statement with Assignment of Leases and Rents," dated April 1, 1996 and recorded in Book 528; Page 1, Indiana County P.A. Recorded of Deeds; and (iii) all other "Loan Documents" as defined in the foregoing Open-End Mortgage and Security Agreement and Fixture Financing Statement with Assignment of Leases and Rents, all of which were originally entered into by and between The Penn Traffic Company and American Enterprise Life Insurance Company.

1.21. "Class" means each category or group of holders of Claims or Claims and Interests as designated under this Plan.

1.22. "Code" means the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., as amended from time to time to the extent applicable to the Cases.

1.23. "Common Stock" means, collectively, (a) the common stock of Penn Traffic issued and outstanding immediately prior to the Effective Date, (b) all options, warrants, conversion, privilege or other legal or contractual rights to purchase the common stock of Penn Traffic, and (c) any rights associated with such common stock.

1.24. "Common Stock Claim" means any Claim with respect to the Common Stock of the kind described in Section 510(b) of the Code.

1.25. "Confirmation" means "confirmation" as used in Section 1129 of the Code.

1.26. "Confirmation Date" means the date on which the Confirmation Order is entered on the docket by the clerk of the Bankruptcy Court.

1.27. "Confirmation Hearing" means the hearing(s) at which the Bankruptcy Court considers Confirmation of this Plan.

1.28. "Convenience Claim" means any (a) Allowed Unsecured Claim against any Debtor that is either (i) equal to or less than $5,000, or (ii) reduced to $5,000 pursuant to an election made on the Ballot by the holder of such Unsecured Claim, and, therefore, is included in Class 4 under this Plan; and (b) with respect to the Senior Note Allowed Claim (i) those portions of said claim held by beneficial holders of the Senior Notes in the amount of $5,000 or less, or (ii) reduced to $5,000 pursuant to an election made on the Ballot by a beneficial holder of Senior Notes.

4

1.29.    "Confirmation Order" means an order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Code.

1.30.    "Creditor" means "creditor" as defined in Section 101(10) of the Code and means a creditor of any Debtor.

1.31.    "Creditors' Committee" means the Official Committee of Unsecured Creditors appointed by the United States Trustee for the Southern District of New York pursuant to Section 1102(a) of the Code in the Cases on June 9, 2003, as it may be reconstituted from time to time.

1.32.    "Cure" means the distribution, within twenty (20) Business Days after the Effective Date or such other time as may be agreed upon by the parties or as ordered by the Bankruptcy Court, of Cash or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court with respect to the assumption of an executory contract or unexpired lease in accordance with the provisions of Article III of this Plan.

1.33.    "Debtors" has the meaning set forth on page 1 of this Plan, a list of which entities, together with their jurisdictions of incorporation and case numbers in the Cases, is attached hereto as Plan Schedule 1.33.

1.34.    "Demme Agreement" means that certain Employment Agreement dated September, 2003 (as amended from time to time) and approved by Final Order of the Bankruptcy Court dated September 17, 2003, between James A. Demme and the Debtors.

1.35.    "Demme Success Bonus" means the distribution, as set forth on Plan Schedule 1.35, to be made on the Initial Distribution Date to Mr. Demme on account of the Administrative Claim held by Mr. Demme pursuant to the Demme Agreement.

1.36.    "DIP Approval Orders" means, collectively, (1) the Interim and Final Orders (a) Authorizing Debtors to (i) Obtain Post-Petition Financing, Including Execution of Credit Agreement and (ii) Grant Liens and Priority Administrative Expense Status, (b) Approving Use Of Cash Collateral and Granting Adequate Protection and (c) Scheduling Final Hearing on Post-Petition Financing and Approving Form and Manner of Notice Thereof, dated May 30, 2003 and July 31, 2003, respectively, and (2) the Order Pursuant to Section 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure Authorizing the Extension of the Existing DIP Financing Facility and Approving Certain Amendments thereto dated March 30, 2004.

1.37.    "DIP Credit Agreement" means the Senior Secured Super-Priority Debtor-in-Possession Loan and Security Agreement, dated as of August 7, 2003, by and among the Debtors, the lenders party thereto, Fleet Capital, as administrative agent, GMAC Commercial Finance, LLC, as documentation agent, and Amsouth Bank and Bank of America, N.A., as co-agents, as amended from time to time.

1.38.    "DIP Facility" means the senior secured superpriority debtor-in-possession financing facility in an original principal amount up to $270 million, provided by the DIP Lenders pursuant to the DIP Credit Agreement, as approved by the DIP Approval Orders.

1.39. "DIP Facility Claim" means any Claim arising under the DIP Credit Agreement and related agreements.

1.40. "DIP Lenders" means the Lenders as defined in the DIP Credit Agreement.

1.41. "Disbursing Agent" means one or more disbursing agents, to be designated by the Debtors prior to the Confirmation Hearing in consultation with the Creditors' Committee, which may receive and make distributions to holders of Allowed Claims under and as provided in this Plan.

1.42. "First Amended Disclosure Statement" means the First Amended Disclosure Statement with respect to this Plan approved by order of the Bankruptcy Court and all supplements, schedules and exhibits thereto.

1.43. "Disputed Claim" means any Claim against a Debtor to the extent that (a) the allowance of such Claim or any portion thereof is the subject of an objection, appeal or motion to estimate that has been timely filed by a party in interest and which objection, appeal or motion has not been determined by a Final Order, (b) such Claim is scheduled by the Debtors in the Schedules as disputed, contingent and/or unliquidated or (c) during the period prior to the deadline fixed by this Plan and/or the Bankruptcy Court for objecting to such Claim, such Claim is in excess of the amount scheduled as other than disputed, unliquidated or contingent.

1.44. "Distribution Record Date" means the date which is ten (10) days prior to the Voting Deadline.

1.45. "Effective Date" means the first Business Day that is ten (10) days after the later of the date on which (a) all conditions precedent set forth in Section 4.1. of this Plan have been satisfied or waived as provided in Section 4.2. of this Plan and (b) no stay of the Confirmation Order is in effect.

1.46. "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 (2000).

1.47. "Estate" means the estates of the Debtors, individually or collectively, as is appropriate in the context, created in the Cases pursuant to Section 541 of the Code.

1.48. "Exculpated Persons" has the meaning ascribed in Section 8.4. of this Plan.

1.49. "Exhibit Filing Date" means the date on which certain exhibits and schedules to this Plan, which shall be in a form reasonably acceptable to the Creditors' Committee, shall be filed with the Bankruptcy Court, which date shall be at least ten (10) days prior to the Voting Deadline.

1.50. "Exit Financing Facility" means the senior secured financing facility to be entered into by the Reorganized Debtors and the lender(s) thereunder as contemplated in

Section 5.7. of this Plan, providing for the principal terms and conditions set forth on Plan Schedule 5.7 to be filed on or before the Exhibit Filing Date.

1.51. "Face Amount" means respecting a Claim, the amount equal to the first of the following that is applicable: (a) the amount fixed or estimated in an order of the Bankruptcy Court; (b) the liquidated amount set forth in a proof of claim filed by the applicable Bar Date; or (c) the amount of the Claim listed in the Schedules as liquidated or not contingent or disputed. If none of the foregoing applies, the Face Amount of the Claim shall be zero ($0) dollars.

1.52. "Filed Fee Applications" has the meaning ascribed in Section 5.2. of this Plan.

1.53. "Final Distribution Date" means the first Business Day that is ten (10) days (or such longer period as may be reasonably determined by the Reorganized Debtors in consultation with the Post-Effective Date Committee) after the date on which all Disputed Claims have been resolved by Final Order.

1.54. "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (a) that has not been reversed, stayed, modified or amended and as to which (i) any right to appeal or seek certiorari, review, reargument, stay or rehearing has been waived or (ii) the time to appeal or seek certiorari, review, reargument, stay or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay or rehearing is pending or (b) as to which an appeal has been taken or petition for certiorari, review, reargument, stay or rehearing has been filed and (i) such appeal or petition for certiorari, review, reargument, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay or rehearing was sought or (ii) the time to appeal further or seek certiorari, further review, reargument, stay or rehearing has expired and no such further appeal or petition for certiorari, further review, reargument, stay or rehearing is pending; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.55. "Funding Contribution" means any payments made by the Debtors or Reorganized Debtors pursuant to Section 7.3.(D) of this Plan.

1.56. "Initial Distribution Date" means the first Business Day that is twenty (20) days (or such longer period as may be reasonably determined by the Reorganized Debtors in consultation with the Post-Effective Date Committee) after the Effective Date.

1.57. "Intercompany Claim" means a Claim by a Debtor or an affiliate of a Debtor against a Debtor or an affiliate of a Debtor.

1.58. "Interest" means all rights (including unpaid dividends) arising from any equity security (as defined in Section 101(16) of the Code) of any of the Debtors, including, without limitation, the Common Stock, but excluding Common Stock Claims.

1.59.   "Interim Distribution Date" means, in the first instance, any date after the Initial Distribution Date on which the Reorganized Debtors determine, in consultation with the Post-Effective Date Committee, that a distribution should be made on account of Class 3 Allowed Claims in light of, inter alia, resolutions of Disputed Claims and the administrative costs of such distribution and, thereafter, the first Business Day occurring on or immediately after each subsequent October 1st, January 1st, April 1st and July 1st, unless extended in consultation with the Post-Effective Date Committee.

1.60.   "KZCS" means KZCS Services, LLC.

1.61.   "KZCS Agreement" means that certain Services Agreement dated May 29, 2003 (as amended from time to time) and approved by the KZCS Order, by and among the Debtors, Steven G. Panagos and KZCS.

1.62.   "KZCS Order" means that certain final order of the Bankruptcy Court dated September 26, 2003 approving the KZCS Agreement.

1.63.   "KZCS Success Fee" means the distribution, as set forth on Plan Schedule 1.63, to be made to KZCS on account of the Administrative Claim held by KZCS pursuant to the KZCS Agreement, subject to satisfying paragraphs 8 and 9 of the KZCS Order.

1.64.   "Lien" means, with respect to any interest in property, any mortgage, lien, pledge, charge, security interest, easement or encumbrance of any kind whatsoever affecting such interest in property.

1.65.   "Management Stock Incentive Program" means a stock incentive plan, pursuant to which, among other provisions, the Reorganized Debtors shall reserve New Penn Traffic Common Shares for award to certain members of management of the Reorganized Debtors, at such times and in a manner to be determined in the sole discretion of the Board of Directors of Reorganized Penn Traffic, such reserved shares to not exceed 10%, on a fully diluted basis, of the aggregate amount of New Penn Traffic Common Shares distributable under Section 6.2.

1.66.   "New Penn Traffic Common Shares" means the shares of common stock of Reorganized Penn Traffic that are to be issued and distributed pursuant to, and as contemplated by, Sections 5.9. and 6.2. of this Plan.

1.67.   "Other Debtor Pension Plans" means (a) Big Bear Stores Hourly Paid General Merchandise Warehouse Employees' Pension Plan, (b) Big Bear Stores Hourly Paid Food Warehouse Employee's Pension Plan, (c) Pension Plan for Bargaining Employees of Eastern Pennsylvania and (d) Riverside Division of Penn Traffic Company Bargaining Employees Pension Plan.

1.68.   "Other Secured Claim" means a Secured Claim classified in Class 2 under this Plan.

1.69.  "PBGC" means the Pension Benefit Guaranty Corporation, a wholly-owned United States government corporation that administers the defined benefit pension plan termination insurance program under Title IV of ERISA.

1.70.  "PBGC Allowed Administrative Claim" means an Administrative Claim in the amount of $3,500,000.00 in favor of the PBGC secured by a Post-Effective Date Trade Lien, which shall be an Allowed Claim pursuant to Section 2.1.(F) of this Plan.

1.71.  "PBGC Allowed Unsecured Claim" means an Unsecured Claim in the amount of $60,000,000.00 in favor of the PBGC which shall be an Allowed Class 3 Claim pursuant to Section 2.8.(B) of this Plan.

1.72.  "PBGC Claims" means all Claims of the PBGC against any of the Debtors, whether or not filed in the Cases, including, without limitation, proofs of claim numbered 2103, 2104, 2105, 2106, 2107, 2108, 2109, 2110, 2111, 2112, 2113, 2114, 2115, 2116, and 2117.

1.73.  "Penn Traffic Creditor Trust" means the trust created pursuant to Section 7.3. of this Plan.

1.74.  "PBGC Settlement" means the settlement reached between the Debtors and the PBGC, in consultation with the Creditors' Committee, with regard to the PBGC Claims and related matters, which is subject to Bankruptcy Court approval pursuant to Rule 9019 of the Bankruptcy Rules.

1.75.  "Person" means any person or entity, including, without limitation, any individual, partnership, joint venture, association, corporation, limited liability company, limited liability partnership company, trust, estate, unincorporated organization or governmental unit.

1.76.  "Petition Date" means May 30, 2003, the date on which the petitions initiating the Cases were filed with the Bankruptcy Court.

1.77.  "PJSC" means Peter J. Solomon Company L.P.

1.78.  "PJSC Agreement" means that certain Letter Agreement dated June 11, 2003 (as amended) and approved by final order of the Bankruptcy Court dated September 26, 2003 between the Debtors and PJSC.

1.79.  "PJSC Reorganization Fee" means the distributions, as set forth on Plan Schedule 1.79, to be made to PJSC on account of the Administrative Claim held by PJSC pursuant to the PJSC Agreement.

1.80.  "Plan" means this First Amended Joint Plan of Reorganization, as defined on page 1 of this Plan, and all addenda, exhibits, schedules and other attachments hereto, all of which are incorporated herein by reference, as the same may be amended from time to time, pursuant to this Plan, the Code or the Bankruptcy Rules.

Doc #:NY6:874288.7

1.81. "Post-Effective Date Committee" has the meaning ascribed in Section 5.2. of this Plan.

1.82. "Post-Effective Date Committee Expenses" has the meaning ascribed in Section 5.2. of this Plan.

1.83. "Post-Effective Date Committee Professional Fees" has the meaning ascribed in Section 5.2. of this Plan.

1.84. "Post-Effective Date Trade Lien" means the lien on certain of the assets of the Reorganized Debtors granted in connection with the Post-Effective Date Trade Lien Program.

1.85. "Post-Effective Date Trade Lien Program" has the meaning ascribed in Section 5.17. of this Plan.

1.86. "Pre-Petition Releasees" has the meaning ascribed in Section 8.5.(B) of this Plan.

1.87. "Pre-Petition Released Matters" has the meaning ascribed in Section 8.5.(B) of this Plan.

1.88. "Pre-Petition Secured Lenders" means the lenders party to the Debtors' pre-petition credit facility.

1.89. "Priority Non-Tax Claim" means a Claim to the extent that it is of the kind described in, and entitled to priority under, Section 507(a)(3), (4), (5) or (6) of the Code.

1.90. "Priority Tax Claim" means a Claim to the extent that it is of the kind described in, and entitled to priority under, Section 507(a)(8) of the Code.

1.91. "Reorganized Debtors" means, on and after the Effective Date, collectively, all of the Debtors that are reorganized under and pursuant to this Plan, and not merged pursuant to Section 5.4. of this Plan.

1.92. "Reorganized Penn Traffic" means, on and after the Effective Date, Penn Traffic, as reorganized under and pursuant to this Plan.

1.93. "Sale Leaseback Transaction" means the transaction to be entered into by the Reorganized Debtors and the purchaser thereunder as contemplated in Section 5.8. of this Plan, providing for the principal terms and conditions set forth on Plan Schedule 5.8 to be filed on or before the Exhibit Filing Date.

1.94. "Schedules" means the joint Schedules of Assets, Liabilities and Executory Contracts filed by the Debtors with the Clerk of the Bankruptcy Court for the Southern District of New York pursuant to Bankruptcy Rule 1007, as such schedules have been or may be amended or supplemented by the Debtors from time to time.

Doc #:NY6:874288.7

1.95. "Secured Claim" means a Claim that constitutes a secured claim under Section 506(a) or 1111(b) of the Code.

1.96. "Securities Act" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

1.97. "Senior Notes" means the $100,000,000 of 11% Senior Debt Securities due on June 29, 2009, issued pursuant to the Senior Note Indenture.

1.98. "Senior Note Allowed Claim" means the Unsecured Claim filed by the Senior Note Trustee in the aggregate amount of $104,546,556.89 arising under or relating to the Senior Note Indenture, which is an Allowed Claim pursuant to Section 2.8.(B) of this Plan.

1.99. "Senior Note Indenture" means the Indenture dated as of June 29, 1999 by and between The Penn Traffic Company and The Bank of New York, previously known as IBJ Whitehall Bank & Trust Company, as Indenture Trustee.

1.100. "Senior Note Trustee" means The Bank of New York, as Indenture Trustee under the Senior Note Indenture for the holders of the Senior Notes.

1.101. "Senior Note Trustee Claim" means the Claim of the Senior Note Trustee for its reasonable fees and expenses accrued and unpaid through the Effective Date.

1.102. "Subsidiary Equity Interests" means any share of common stock or other instrument evidencing a present ownership interest in any of Penn Traffic's subsidiaries, whether or not transferable, and any options, warrants or rights, contractual or otherwise, to acquire any such interest.

1.103. "Taxpayer Identification Request Form" means, in the case of a domestic person or entity, an IRS Form W-9 and in the case of a foreign person or entity an IRS Form W-8.

1.104. "Trade Lien Claim" means a Secured Trade Claim (as defined in the Trade Lien Order) entitled to the benefits of the Trade Liens (as defined in the Trade Lien Order) granted under the Trade Lien Program (as defined in the Trade Lien Order) which has not been paid in full as of the Effective Date.

1.105. "Trade Lien Order" means that Order Pursuant to 11 U.S.C. §§ 105(A) & 364(C)(3) Authorizing Debtors to Implement the Trade Lien Program, Grant Junior Liens, Waive Certain Avoidance Claims and Amend Reclamation Claims Order dated October 23, 2003, as amended and supplemented.

1.106. "Trust Advisory Board" means the board that is to be created pursuant to Section 7.4. of this Plan for the purpose of advising the Trustee with respect to decisions affecting the Penn Traffic Creditor Trust.

1.107. "Trust Agreement" means that certain Trust Agreement regarding the Penn Traffic Creditor Trust, a form of which is attached to this Plan as Exhibit 3.

11

1.108. "Trust Assets" means those assets, including the Trust Claims, to be transferred to and owned by the Penn Traffic Creditor Trust pursuant to Section 7.2. of this Plan.

1.109. "Trust Claims" means any and all Causes of Action against (a) any Person (excluding Kroll Zolfo Cooper LLC, KZCS, LLC and Paul, Weiss, Rifkind, Wharton & Garrison, LLP, and each of their respective affiliates, officers, directors, partners, employees and members), which allege breaches of duty owed to Penn Traffic by such Person and which are the subject matter of any action or proceeding instituted by the Securities and Exchange Commission against such Person, whether such action or proceeding is adjudicated or settled, and (b) any accounting or auditing firm (including but not limited to PricewaterhouseCoopers LLP) with respect to the Debtors' accounting practices or audit or review of the Debtors' financial statements.

1.110. "Trust Recoveries" means any and all proceeds received by the Penn Traffic Creditor Trust from (a) the prosecution to, and collection of, a final judgment of a Trust Claim and/or (b) the settlement or other compromise of a Trust Claim.

1.111. "Trustee" means the trustee of the Penn Traffic Creditor Trust as contemplated by the Trust Agreement.

1.112. "Unclaimed Property" means any distribution under the Plan that is unclaimed by the holder of the Allowed Claim entitled to such distribution one hundred twenty (120) days after the distribution date applicable to such distribution.

1.113. "Unsecured Claim" means a Claim that is not an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, an Other Secured Claim, an Intercompany Claim or a Common Stock Claim.

1.114. "Voting Deadline" means the date set in an order of the Bankruptcy Court as the deadline for the return of Ballots accepting or rejecting this Plan.

**B.** **Interpretation.** For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise provided in this Plan, any reference in this Plan to an existing document or exhibit means such document or exhibit, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (d) unless otherwise specified herein, any reference to an entity as a holder of a Claim includes that entity's successors, assigns and affiliates; (e) unless otherwise specified, all references in this Plan to Sections, Articles, schedules and exhibits are references to Sections, Articles, schedules and exhibits of or to this Plan; (f) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of this Plan; and (h) the rules of construction set forth in Section 102 of the Code shall apply.

Doc #:NY6:874288.7

**C.** **Computation of Time.** In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The following is a designation of the Classes of Claims and Interests classified under this Plan. A Claim or Interest is in a particular Class for purposes of voting on, and of receiving distributions pursuant to, this Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date. Claims against more than one Debtor with respect to a single obligation, by reason of guaranty, joint or "control group" liability, or otherwise, shall be deemed to be a single Claim in the Allowed amount of such obligation for purposes of voting, allowance, distribution and all other purposes under this Plan. In accordance with Section 1123(a)(1) of the Code, Administrative Claims and Priority Tax Claims have not been classified, although the treatment for such unclassified Claims is set forth below.

**A.** **Unclassified Claims**.

2.1. Administrative Claims.

(A) General. Subject to the provisions of Section 6.4.(A) of this Plan or as otherwise specifically provided in this Plan, or unless otherwise agreed by the holder of an Allowed Administrative Claim (in which event such other agreement shall govern), each holder of an Allowed Administrative Claim shall be paid in full in Cash (i) at the sole option of the Debtors (before the Effective Date) or the Reorganized Debtors (on or after the Effective Date), (a) in the ordinary course of business as the Claim becomes due and owing or (b) on the Initial Distribution Date or (ii) on such other date as the Bankruptcy Court may order, including, without limitation, in the case of professional persons employed by the Debtors or the Creditors' Committee who have filed applications for final compensation in accordance with Section 6.4.(A) of this Plan, the date on which orders approving amounts set forth in such applications are entered by the Bankruptcy Court.

(B) Statutory Fees. On the Initial Distribution Date, Administrative Claims for fees payable pursuant to Section 1930 of title 28 of the United States Code, 28 U.S.C. § 1930, shall be paid in Cash in an amount equal to the amount of such Administrative Claims. All such fees payable after the Initial Distribution Date shall be assumed and paid by the Reorganized Debtors. All fees payable to the United States Trustee shall be paid until entry of a final decree or an order dismissing the Cases.

(C) KZCS Success Fee. The Reorganized Debtors shall make the distributions as set forth on Plan Schedule 1.63 in satisfaction of the KZCS Success Fee; provided, however, that, in accordance with paragraph 9 of the KZCS Order, KZCS shall make a request to the Bankruptcy Court for payment of the KZCS Success Fee on notice to the United States Trustee and all other parties entitled to receive notice.

(D)    PJSC Reorganization Fee. Subject to Section 6.4.(A) of this Plan, the Reorganized Debtors shall make the distributions as set forth on Plan Schedule 1.79 in satisfaction of the PJSC Reorganization Fee.

(E)    Demme Success Bonus. The Reorganized Debtors shall make the distributions as set forth on Plan Schedule 1.35, in satisfaction of the Demme Success Bonus.

(F)    PBGC Allowed Administrative Claim. The Reorganized Debtors shall make distributions on account of the PBGC Allowed Administrative Claim in four equal installments payable bi-annually commencing on the date which is six months following the Effective Date, and to be secured until fully paid by the Post-Effective Date Trade Lien for so long as the Post-Effective Date Trade Lien Program is in effect and, thereafter, by a lien attached to the same collateral and on the same terms and of the same priority as under the Post-Effective Date Trade Lien Program.

2.2.    Senior Note Trustee Claim. The Reorganized Debtors shall pay the Senior Note Trustee Claim in Cash on the Effective Date, without the need for the Senior Note Trustee to file an application for allowance with the Bankruptcy Court. Upon payment of such Senior Note Trustee Claim in full, the Senior Note Trustee shall be deemed to have released its lien and priority rights for its fees and expenses under the Senior Note Indenture solely to the extent of such payment.

2.3.    Priority Tax Claims. Unless otherwise agreed by the holder of an Allowed Priority Tax Claim (in which event such other agreement shall govern), each holder of an Allowed Priority Tax Claim shall receive, at the Reorganized Debtors' option, (a) on the Initial Distribution Date, Cash equal to the amount of such Allowed Priority Tax Claim or (b) Cash in six equal annual installments, together with interest thereon at the legal rate required for such claims in chapter 11 cases, which interest shall be paid annually in arrears pursuant to Section 1129(a)(9)(C) of the Code.

2.4.    DIP Facility Claim. On the Effective Date, the DIP Facility Claim shall be paid in full in Cash, or otherwise satisfied in a manner acceptable to the DIP Lenders.

2.5.    Post-Petition Trade Lien Claims. Upon the Effective Date, the Lien granted by the Trade Lien Program shall be released. Unless otherwise agreed by the holder of an Allowed Trade Lien Claim (in which event such other agreement shall govern), each holder of an Allowed Trade Lien Claim shall be paid in full in Cash on the date on which, in the ordinary course of business, such Allowed Trade Lien Claim becomes due and owing. If the Reorganized Debtors implement a Post-Effective Date Trade Lien Program, then each holder of an Allowed Trade Lien Claim shall also share *pari passu* in any Post-Effective Date Trade Lien on the terms and conditions described in Section 5.17. hereof.

Doc #:NY6:874288.7

**B.** **Classified Claims and Interests**.

2.6.    Class 1 -- Priority Non-Tax Claims

(A)    _Classification_.  Class 1 consists of all Priority Non-Tax Claims.

(B)    _Allowance_.  Class 1 Claims shall be allowed or disallowed in accordance with Section 6.4.(B) of this Plan and applicable provisions of the Code and Bankruptcy Rules.

(C)    _Treatment_.  Unless otherwise agreed by the holder of an Allowed Priority Non-Tax Claim (in which event such agreement shall govern), each holder of an Allowed Class 1 Claim shall be paid in full in Cash on the later of the Initial Distribution Date and a date that is as soon as practicable after the date upon which such Claim becomes an Allowed Priority Non-Tax Claim.

(D)    _Impairment and Voting_.  Class 1 Claims are unimpaired and the holders thereof are not entitled to vote on this Plan.

2.7.    Class 2 -- Other Secured Claims.

(A)    _Classification_.  Class 2 consists of Other Secured Claims.

(B)    _Allowance_.  Class 2 Claims shall be allowed or disallowed in accordance with Section 6.4.(B) of this Plan and applicable provisions of the Code and Bankruptcy Rules.

(C)    _Treatment_.  Other Secured Claims against the Debtors shall, at the sole option of the Debtors, be (i) paid in full in Cash on the Initial Distribution Date, (ii) reinstated according to the terms of the relevant instrument, (iii) paid on such other terms as the Debtors and the holder of such Claim may agree, or (iv) satisfied through the surrender by the applicable Debtors of the collateral securing the Claim to the holder thereof.  Each of the Blairsville Property Claim and the Clarion Property Claim shall be Allowed Class 2 "Other Secured Claims" hereunder.  Notwithstanding anything contained in this Plan to the contrary, pursuant to and in accordance with the terms of Section 1124(2) of the Bankruptcy Code, the Blairsville Property Mortgage Documents and the Clarion Property Mortgage Documents shall be reinstated and reaffirmed in accordance with their terms as provided in Section 2.7.(C)(ii) hereof, and such agreements shall continue in full force and effect following the Effective Date.

(D)    _Impairment and Voting_.  Class 2 Claims are unimpaired and the holders thereof are not entitled to vote on this Plan.

Doc #:NY6:874288.7

2.8.   Class 3 -- Unsecured Claims.

(A)   Classification.  Class 3 consists of Unsecured Claims, including the PBGC Claims and the Senior Note Allowed Claim.

(B)   Allowance.  Class 3 Unsecured Claims shall be allowed or disallowed in accordance with Section 6.4.(B) of this Plan and applicable provisions of the Code and Bankruptcy Rules, except (i) in accordance with the PBGC Settlement, the PBGC Allowed Unsecured Claim shall be an Allowed Class 3 Claim pursuant to this Plan and entitled to the distributions set forth herein, and (ii) the Senior Note Allowed Claim shall be an Allowed Claim pursuant to this Plan and entitled to the distributions set forth herein and any proof of claim in respect of the Senior Notes filed by a registered or beneficial holder of Senior Notes for principal and interest owing as of the Petition Date shall be deemed expunged and disallowed as duplicative of proof of claim numbered 2099 filed by the Senior Note Trustee.

(C)   Treatment.  Each holder of an Allowed Unsecured Claim shall receive (i) its pro rata share of 100% of the New Penn Traffic Common Shares issued and distributed pursuant to Sections 5.9. and 6.2. of this Plan, subject to (a) dilution resulting from the issuance of additional New Penn Traffic Common Shares upon the exercise of options to purchase New Penn Traffic Common Shares granted to management of Reorganized Penn Traffic pursuant to the Management Stock Incentive Program, and (b) such adjustments to the total issued New Penn Traffic Common Shares as may occur pursuant to Section 6.3.(A) of this Plan, and (ii) its pro rata share of all Trust Recoveries, if any.

(D)   Impairment and Voting.  Class 3 Unsecured Claims are impaired and the holders thereof are entitled to vote on this Plan.

2.9.   Class 4 -- Convenience Claims.

(A)   Classification.  Class 4 consists of all Convenience Claims.

(B)   Allowance.  Claims, including claims of beneficial holders of Senior Notes, in the amount of $5,000.00 or less shall be Allowed in the amount filed or scheduled, and Claims voluntarily reduced to $5,000.00 by Ballot election shall be Allowed in the amount of $5,000.00.

(C)   Treatment.  Each holder of an Allowed Convenience Claim shall receive Cash equal to 15% of its Allowed Claim against the Debtors, provided, however, that a holder of more than one Allowed Convenience Claim, which Claims in the aggregate exceed $5,000.00, may elect to be treated with respect to and in the amount of such aggregated Claim, as a Class 3 Claimholder for distribution purposes only.

(D)   Impairment and Voting.  Class 4 Convenience Claims are impaired and the holders thereof are entitled to vote on this Plan.

Doc #:NY6:874288.7

2.10.  Class 5 -- Intercompany Claims.

(A)  Classification.  Class 5 consists of Intercompany Claims.

(B)  Treatment.  Subject to Section 5.10. of this Plan, Intercompany Claims shall be discharged, and the holders of Intercompany Claims shall not be entitled to receive or retain any property on account of such Claims.

(C)  Impairment and Voting.  Class 5 Intercompany Claims are impaired and the holders thereof are deemed not to have accepted this Plan.

2.11.  Class 6 -- Common Stock Claims and Interests.

(A)  Classification.  Class 6 consists of Common Stock Claims and Interests.

(B)  Treatment.  Interests shall be cancelled, and the holders of Common Stock Claims and Interests shall not be entitled to receive or retain any property on account of such Claims and Interests.

(C)  Impairment and Voting.  Class 6 Common Stock Claims and Interests are impaired and the holders thereof are deemed not to have accepted this Plan.

## ARTICLE III

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

3.1.  Rejected Contracts and Leases.  Each executory contract and unexpired lease to which any of the Debtors is a party shall be deemed automatically rejected as of the Effective Date, unless such executory contract or unexpired lease (a) shall have been previously rejected or assumed by order of the Bankruptcy Court or (b) is the subject of a motion to assume or reject filed on or before the Confirmation Date or (c) is listed on the schedule of contracts and leases to be rejected or assumed as of the Effective Date pursuant to this Plan, annexed as Plan Schedules 3.1 and 3.2, respectively (and as the same may be modified or supplemented, if at all, pursuant to Section 3.3.(B) of this Plan).  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such deemed rejection as of the Effective Date.  All executory contracts and unexpired leases specifically listed on the schedule of rejected executory contracts and unexpired leases, annexed as Plan Schedule 3.1, shall be deemed automatically rejected pursuant to this Plan by the applicable Debtor as of the Effective Date.

3.2.  Assumed Contracts and Leases.  All executory contracts and unexpired leases specifically listed on the schedule of assumed executory contracts and unexpired leases, which shall be filed twenty (20) days prior to the Voting Deadline as Plan Schedule 3.2, as modified or supplemented, if at all, pursuant to Section 3.3.(B) of this Plan, shall be deemed automatically assumed pursuant to this Plan by the applicable Debtor as of the Effective Date.

Each executory contract and unexpired lease that is assumed under this Plan and relates to the use, ability to acquire or occupancy of real property shall include (a) all

17

modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affect such executory contract or unexpired lease and (b) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements and any other interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to a Final Order of the Bankruptcy Court or is otherwise rejected as part of this Plan.

3.3. <u>Miscellaneous.</u>

(A) The Debtors reserve the right to file a motion on or before the Confirmation Date to assume or reject any executory contract or unexpired lease.

(B) Notwithstanding any other provision of this Plan, each of the Debtors shall retain the right, at any time prior to the Confirmation Hearing, to modify or supplement Plan Schedule 3.1 and Plan Schedule 3.2 including, without limitation, the right to add any executory contract or unexpired lease to, or delete any executory contract or unexpired lease from, Plan Schedule 3.1 or Plan Schedule 3.2. The Debtors shall promptly provide notice of any amendment, modification or supplement to Plan Schedules 3.1 or 3.2 to the Creditors' Committee, the DIP Lenders and the affected non-debtor party to the executory contract or unexpired lease.

(C) Listing an executory contract or unexpired lease on Plan Schedule 3.1 or Plan Schedule 3.2 shall not constitute an admission by any of the Debtors or the Reorganized Debtors that such contract or lease (including any related agreements that may exist) is an executory contract or unexpired lease or that the applicable Debtor or Reorganized Debtor has any liability thereunder.

3.4. <u>Payments Related to Assumption of Executory Contracts and Unexpired Leases.</u> Any monetary amounts by which each executory contract and unexpired lease to be assumed under this Plan may be in default shall be satisfied by Cure in the amount, if any, set forth in Plan Schedule 3.2, or, in the event of an objection to such Cure amount, in the amount agreed between the parties or as ordered by the Bankruptcy Court. Objections, if any, to a Cure amount set forth on Plan Schedule 3.2 shall be filed by the non-debtor party to the unexpired lease or executory contract with the Bankruptcy Court on or before the Voting Deadline. If the non-debtor party to the unexpired lease or executory contract does not file an objection with the Bankruptcy Court to the amount of Cure set forth in Plan Schedule 3.2 on or before the Voting Deadline, or if notified of the assumption after the Voting Deadline, within ten (10) days of such notice, such non-debtor party shall be deemed to accept such Cure amount. In the event of a dispute regarding (a) the nature or the amount of any Cure, (b) the ability of the applicable Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Code) under the contract or lease to be assumed or (c) any other matter pertaining to assumption, such dispute shall be determined by the Bankruptcy Court, or as the parties may otherwise agree. To the extent that the Debtor which is a party to the unexpired lease or executory contract is to be merged pursuant to Section 5.4. of

Doc #:NY6:874288.7

this Plan, upon assumption as contemplated herein, the Reorganized Debtor that is the surviving entity after such merger shall be the party to the unexpired lease or executory contract.

3.5.    Post-Petition Contracts and Leases.  All contracts, agreements and leases entered into, or assumed by, the Debtors after the Petition Date shall be deemed assigned by the Debtors to the Reorganized Debtors on the Effective Date.

3.6.    Rejection Damages Bar Date.  Except as provided by any separate Bar Date order previously entered by the Bankruptcy Court, if the rejection by a Debtor, pursuant to this Plan or otherwise, of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and shall not be enforceable against any Debtor or Reorganized Debtor or the properties of any of them unless a proof of such Claim is filed with the clerk of the Bankruptcy Court and served upon counsel to the Debtors within thirty (30) days after service of the earlier of (a) notice of the Confirmation Date or (b) other notice that the executory contract or unexpired lease has been rejected pursuant to an order of the Bankruptcy Court.

## ARTICLE IV

## CONDITIONS PRECEDENT

4.1.    Conditions to Occurrence of Effective Date.  The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Section 4.2. of this Plan:  (i) the Reorganized Debtors shall have entered into definitive documentation with respect to the Exit Financing Facility and the Sale Leaseback Transaction, in each case, which shall be reasonably satisfactory to the Creditors' Committee, and all conditions precedent under the Exit Financing Facility and Sale Leaseback Transaction shall have been satisfied (but for the occurrence of the Effective Date); (ii) the Confirmation Order shall have become a Final Order; (iii) the Amended Certificates of Incorporation shall have been properly filed with the appropriate Secretaries of State; (iv) all authorizations, consents and regulatory approvals required (if any) for the Plan's effectiveness shall have been obtained; (v) the Cash Balance Pension Plan shall have been terminated pursuant to relevant provisions of ERISA; (vi) the Bankruptcy Court shall have entered a Final Order approving the PBGC Settlement, and (vii) the Reorganized Debtors shall have entered into the Trust Agreement.

4.2.    Waiver of Conditions to Consummation.  The conditions set forth in Section 4.1. of this Plan may be waived, in whole or in part, upon the mutual consent of the Debtors and the Creditors' Committee, without notice to any other parties in interest or the Bankruptcy Court and without a hearing.  No waiver or non-waiver of any such conditions shall diminish the application of the mootness doctrine with respect to the Confirmation of this Plan or any order entered in connection therewith, which doctrine shall apply to the fullest extent of applicable law.

4.3.    Non-Consensual Confirmation.  Because Classes 5 and Class 6 are deemed not to have accepted this Plan pursuant to Section 1126(g) of the Code, as to such Classes and any other Class that votes to reject this Plan, the Debtors are seeking confirmation of this Plan in accordance with Section 1129(b) of the Code, either under the terms provided herein

or upon such terms as may exist if this Plan is modified in accordance with Section 1127(d) of the Code.

## ARTICLE V

## IMPLEMENTATION OF PLAN

5.1.     Pre-Effective Date Management and Operation of Debtors.  After the Confirmation Date and until the Effective Date, the current directors and officers of each Debtor shall continue to serve in such capacities, subject to such changes as may be determined by the Board of Directors of a Debtor in accordance with the current Bylaws and Certificates of Incorporation of such Debtor (or comparable organizational documents).

5.2.     Post-Effective Date Committee; Dissolution of Committee.  The Creditors' Committee shall continue to exist after the Confirmation Date until the Effective Date with the same power and authority, and the same ability to retain and compensate professionals, as it had prior to the Confirmation Date.  On and as of the Effective Date, the Creditors' Committee shall be reconstituted and shall be comprised of no more than three (3) members of the Creditors' Committee (which may include *ex-officio* members) prior to the Effective Date (the "Post-Effective Date Committee").  The members of the Creditors' Committee who are not members of the Post-Effective Date Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Cases.  In the event of the death or resignation of any member of the Post-Effective Date Committee after the Effective Date, a majority of the remaining members of the Post-Effective Date Committee shall have the right to designate a successor from among the holders of Allowed Class 3 Claims.  If a Post-Effective Date Committee member assigns its Claim or releases the Debtors from payment of all or the balance of its Claim, such act shall constitute a resignation from the Post-Effective Date Committee.  Until a vacancy on the Post-Effective Date Committee is filled, the Post-Effective Date Committee shall function in its reduced number.  The Reorganized Debtors shall consult with the Post-Effective Date Committee on a regular basis concerning the Reorganized Debtors' investigation, prosecution and proposed settlement of Class 3 Claims and shall provide written reports to the Post-Effective Date Committee on a monthly basis regarding the status of the Claims resolution process.  The Reorganized Debtors shall not settle or compromise any Class 3 Claim in excess of the Allowed amount of $25,000 without either the approval of the Post-Effective Date Committee (which shall act by majority vote) or an order of the Bankruptcy Court.  Subject to the approval of the Post-Effective Date Committee, the Reorganized Debtors may settle or compromise any Class 3 Claim in excess of the Allowed amount of $25,000 without an order of the Bankruptcy Court. The Reorganized Debtors may settle or compromise any Class 3 Claim for less than the Allowed amount of $25,000 without an order of the Bankruptcy Court and without the approval of the Post-Effective Date Committee. The duties of the Post-Effective Date Committee shall also include services related to any applications for allowance of compensation or reimbursement of expenses of professional persons pending on the Effective Date or filed after the Effective Date (collectively, the "Filed Fee Applications") and the Post-Effective Date Committee shall have the right to be heard on all issues relating to Final Fee Applications. The Reorganized Debtors shall pay (a) the reasonable expenses of the members of the Creditors' Committee between the

20

Confirmation Date and the Effective Date, and the Post-Effective Date Committee (the "Post-Effective Date Committee Expenses") and (b) the reasonable fees and expenses of the professional persons employed by the Post-Effective Date Committee in connection with its duties and responsibilities as set forth in this Plan (the "Post-Effective Date Committee Professional Fees") and the Post-Effective Date Committee shall have the right to be heard on all issues relating to the Filed Fee Applications. The Post-Effective Date Committee Expenses and the Post-Effective Date Committee Professional Fees shall be paid within ten (10) Business Days after submission of a detailed invoice therefor to the Reorganized Debtors. If the Reorganized Debtors dispute the reasonableness of any such invoice, the Reorganized Debtors, the Post-Effective Date Committee or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. The undisputed portion of such reasonable fees and expenses shall be paid as provided herein. The Post-Effective Date Committee shall be dissolved and the members thereof shall be released and discharged of and from further authority, duties, responsibilities and obligations relating to and arising from and in connection with the Cases on the later of (i) the Final Distribution Date and (ii) the date all services related to Filed Fee Applications are completed, and the retention or employment of the Post-Effective Date Committee's professionals shall terminate.

5.3. <u>Pre-Effective Date Injunctions or Stays</u>. All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Cases pursuant to Sections 105 or 362 of the Code or otherwise that are in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

5.4. <u>Merger of Certain Debtors</u>. Effective as of the Effective Date but immediately prior to the discharge of the Debtors described in Section 8.2. of this Plan, each of Dairy Dell, Inc., Bradford Supermarkets, Inc., Abbott Realty Corporation and Big Bear Distribution Company shall be merged with and into The Penn Traffic Company and The Penn Traffic Company shall be the surviving corporation in such merger. Except as otherwise set forth in this Plan, or as modified by appropriate corporate action after the Effective Date, the corporate structure and equity ownership of the Debtors and their subsidiaries shall be unchanged.

5.5. <u>Amended Certificates of Incorporation and Amended Bylaws</u>. As of the Effective Date, the certificates of incorporation and bylaws of each of the Debtors (or comparable organizational documents) shall be amended as necessary to satisfy the provisions of this Plan and the Code, including, without limitation, the prohibition against the issuance of non-voting equity securities set forth in Section 1123(a)(6) of the Code (respectively, the "Amended Certificates of Incorporation" and the "Amended Bylaws"). The forms of Amended Certificates of Incorporation and Amended Bylaws, to be filed on or before the Exhibit Filing Date as Exhibits 1 and 2 to this Plan, shall become effective on the Effective Date. After the Effective Date, the Amended Certificates of Incorporation and Amended Bylaws shall be subject to such further amendments or modifications as may be made by law, or pursuant to such Amended Certificates of Incorporation and Amended Bylaws.

Doc #:NY6:874288.7

5.6.    Post-Effective Date Management and Operation of Reorganized Debtors.
As of the Effective Date, the directors and officers of each Debtor that is not a Reorganized
Debtor shall be terminated.  The Debtors shall file Plan Schedule 5.6 with the Bankruptcy Court
on or before the Exhibit Filing Date setting forth the offices, the names and affiliations of, and
the compensation proposed to be paid to, the individuals intended to serve as directors and
officers of each Reorganized Debtor on and after the Effective Date.  The initial board of
directors of Reorganized Penn Traffic shall consist of seven members, four of which shall be
designated by the Creditors' Committee, two of which shall be designated by the holders of a
majority of the Senior Notes, and one of which shall be Robert J. Chapman.  On and after the
Effective Date, each Reorganized Debtor shall be governed in accordance with the Amended
Certificates of Incorporation and Amended Bylaws.

5.7.    Exit Financing Facility.  The closing of the Exit Financing Facility shall
occur on or before the Effective Date.

5.8.    Sale Leaseback Transaction.  The closing of the Sale Leaseback
Transaction shall occur on or before the Effective Date.

5.9.    Issuance of New Penn Traffic Common Shares.  On the Initial Distribution
Date, each Interim Distribution Date and the Final Distribution Date, as applicable, Reorganized
Penn Traffic shall issue New Penn Traffic Common Shares for distribution in accordance with
this Plan.  The issuance of the New Penn Traffic Common Shares and the distribution thereof in
accordance with this Plan shall be exempt from registration under applicable securities laws
(including without limitation, Section 5 of the Securities Act or any similar state or local law
requiring the registration for offer or sale of a security or registration or licensing of an issuer of
a security) pursuant to Section 1145(a) of the Code, and may be sold without registration to the
extent permitted under Section 1145 of the Code.

5.10.   Transfer of Intercompany Claims.  Prior to the discharge of Intercompany
Claims, as provided in Section 2.10.(B) of this Plan, the Debtors shall have the right to retain, or
effect such transfers and setoffs with respect to, Intercompany Claims as they may deem
appropriate for accounting, tax and commercial business purposes, to the fullest extent permitted
by applicable law, without affecting the treatment accorded those claims pursuant to
Section 2.10. of this Plan.

5.11.   Management Stock Incentive Program.  As soon as practicable after the
Effective Date, the Management Stock Incentive Program shall be adopted by the Board of
Directors of Reorganized Penn Traffic.

5.12.   Effectuating Documents; Further Transactions.  The Chief Executive
Officer, President, Chief Financial Officer, General Counsel, Vice President-Finance & Chief
Accounting Officer or Senior Vice President & Chief Marketing Officer of Penn Traffic or any
Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases,
indentures and other agreements or documents and take such actions as may be necessary or
appropriate to effectuate and implement the provisions of this Plan, without any further order of
the Bankruptcy Court and without the requirement of any further action by any stockholder or
director of any of the Debtors or Reorganized Debtors.  The Secretary or any Assistant Secretary

of each Debtor or Reorganized Debtor shall be authorized to certify or attest to any of the foregoing actions.

5.13. <u>Exemption From Certain Transfer and Other Taxes</u>. Pursuant to Section 1146 of the Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any Lien, mortgage, deed of trust or other security interest, including with respect to the Exit Financing Facility, the Sale Leaseback Transaction and the Post-Effective Date Trade Lien Program and any documents relating to the Exit Financing Facility, the Sale Leaseback Transaction and the Post-Effective Date Trade Lien Program (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with this Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under this Plan or the reinvesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated in this Plan and (d) the issuance, renewal, modification or securing of indebtedness by such means including with respect to the Exit Financing Facility, the Sale Leaseback Transaction and the Post-Effective Date Trade Lien Program and any documents relating to the Exit Financing Facility, the Sale Leaseback Transaction and the Post-Effective Date Trade Lien Program, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including, without limitation, the Confirmation Order, the Exit Financing Facility, the Sale Leaseback Transaction and the Post-Effective Date Trade Lien Program and any documents relating to the Exit Financing Facility, the Sale Leaseback Transaction and the Post-Effective Date Trade Lien Program, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept any such instruments or documents without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

5.14. <u>Continuation of Penn Traffic's Pension Plans</u>. Other than the Debtors' Cash Balance Pension Plan, termination of which is a condition precedent to the effectiveness of this Plan pursuant to Section 4.1.(v) hereof, the Reorganized Debtors shall continue to sponsor, administer and maintain the Other Debtor Pension Plans upon the occurrence of the Effective Date, including meeting the minimum funding standards under ERISA and the Internal Revenue Code, paying all PBGC insurance premiums, and administering and operating the Other Debtor Pension Plans in accordance with their terms and ERISA. Nothing in this Plan shall be deemed to discharge, release, or relieve any Person, in any capacity, from any current or future liability, if any, for breaches of fiduciary duty under ERISA with respect to the Cash Balance Pension Plan and the Other Debtor Pension Plans, and PBGC and such Pension Plans shall not be enjoined or precluded from enforcing such liability as a result of this Plan's provisions or confirmation. Notwithstanding the foregoing, after the Effective Date, the Reorganized Debtors shall have the right and authority to terminate, amend or freeze the Other Debtor Pension Plans in accordance with their terms, ERISA, the Internal Revenue Code, and other applicable law.

Doc #:NY6:874288.7

5.15.   Employment, Retirement, and Incentive Compensation Plans and Programs.  All employment and severance agreements and policies, and all employee compensation and benefit plans, policies, and programs of the Debtors applicable generally to its employees, including agreements and programs subject to Section 1114 of the Bankruptcy Code, as in effect on the Effective Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans, life, accidental death, and dismemberment insurance plans, and workers' compensation programs, but not including the Other Debtor Pension Plans, shall be deemed to be, and shall be treated as though they are, executory contracts but only to the extent that rights under such agreements and programs are held by the Debtors or Persons who are the Reorganized Debtors' employees as of the Effective Date, and the Debtors' obligations under such agreements and programs to individuals who are employees of the Debtors on the Effective Date shall survive the Effective Date of the Plan, without prejudice to the Reorganized Debtors' rights under applicable non-bankruptcy law to modify, amend, or terminate the foregoing arrangements, except for (i) such executory contracts or plans deemed rejected pursuant to the Plan (to the extent such rejection does not violate Section 1114 of the Bankruptcy Code) and (ii) such executory contracts or plans as have previously been terminated, or rejected, pursuant to a Final Order, or specifically waived by the beneficiaries of such plans, contracts, or programs.

5.16.   Substantive Consolidation of the Debtors.  On the Confirmation Date, the Debtors shall be substantively consolidated for all purposes related to the Plan, including, without limitation, for purposes of voting, confirmation and distribution.  Subject to the occurrence of the Effective Date, (i) all assets and liabilities of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of the other Debtors, (ii) no distributions shall be made under the Plan on account of Intercompany Claims among the Debtors and such Claims shall be discharged on the Effective Date in accordance with Section 2.10. of this Plan (but subject to Section 5.10. of this Plan), (iii) no distributions shall be made under the Plan on account of Subsidiary Equity Interests, (iv) all guarantees of the Debtors of the obligations of any other Debtor shall be deemed eliminated so that any claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors and (v) each and every claim filed or to be filed in the Case of any of the Debtors shall be deemed filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors.  Such substantive consolidation shall not (other than for purposes related to the Plan) affect (i) the legal and corporate structure of the Reorganized Debtors, (ii) Subsidiary Equity Interests and (iii) pre and post Petition Date guarantees that are required to be maintained (a) in connection with executory contracts or unexpired leases that were entered into during the Cases or that have been or shall be assumed, (b) pursuant to the Plan, or (c) in connection with the Exit Financing Facility.

5.17.   Post-Effective Date Trade Lien Program; Creditor Subordination Provision.  The Debtors are considering implementing a trade lien program for the benefit of certain vendors who provide inventory and other trade support on credit to the Reorganized Debtors from time to time on and after the Effective Date as well as to the holders of any Allowed Trade Lien Claims (the "Post-Effective Date Trade Lien Program").  The terms and conditions of such Post-Effective Date Trade Lien Program, if any, shall be set forth on Plan

24

Schedule 5.17 to be filed with the Bankruptcy Court on or before the Exhibit Filing Date. Any Post-Effective Date Trade Lien granted in connection with the Post-Effective Date Trade Lien Program and any obligations due and owing in respect thereof shall be junior and subordinate in all respects to the Exit Financing Facility and any liens granted in connection therewith. In addition, except as otherwise provided in the Post-Effective Date Trade Lien Program and as more fully described therein, each Person entitled to receive a distribution under this Plan that becomes a creditor or equity security holder of the Reorganized Debtors shall be deemed to contractually subordinate any present or future claim, right, or other interest it may have in and to any property of the Reorganized Debtors to claims of the vendors secured by any Post-Effective Date Trade Lien; provided, however, that in no case shall the lenders under the Exit Financing Facility be deemed subordinated in this regard. Such contractual subordination shall terminate upon termination or expiration of any Post-Effective Date Trade Lien.

5.18. Cancellation of Existing Securities and Agreements. Except for purposes of evidencing a right to distributions under this Plan, on the Effective Date all the agreements and other documents evidencing the Senior Note Allowed Claim shall be terminated, cancelled, and of no further force or effect; provided, however, that the Senior Note Indenture shall continue in effect for the purposes of (i) allowing the Senior Note Trustee to make any distributions on account of the Senior Notes pursuant to this Plan and to perform such other necessary administrative functions with respect thereto, and (ii) permitting the Senior Note Trustee to maintain and assert any rights or liens on account of the Senior Note Trustee Claim.

## ARTICLE VI

## DISTRIBUTIONS AND CLAIMS ALLOWANCE

6.1. Cash Distributions. Except as otherwise provided in this Plan, all distributions to be made to the holders of Allowed Claims in Cash under this Plan shall be made on or as soon as practicable after the Initial Distribution Date.

6.2. Distributions to Holders of Allowed Unsecured Claims. As soon as practicable on or after the Effective Date, Reorganized Penn Traffic shall issue New Penn Traffic Common Shares, and make available to the Disbursing Agent New Penn Traffic Common Shares, in a number sufficient to make distributions on behalf of the Debtors to holders of Allowed Class 3 Claims in accordance with Sections 2.8.(C) and 6.2.(C) and (F) of this Plan. On any Interim Distribution Date and on the Final Distribution Date, as applicable, Reorganized Penn Traffic shall issue New Penn Traffic Common Shares, and make available to the Disbursing Agent New Penn Traffic Common Shares, in a number sufficient to make distributions on behalf of the Debtors to holders of Allowed Class 3 Claims in accordance with Sections 2.8.(C), 6.2.(D), (E) and (F) of this Plan. The Disbursing Agent shall make distributions of New Penn Traffic Common Shares to holders of Allowed Class 3 Claims as follows:

(A) As soon as practicable after the Effective Date, Reorganized Penn Traffic shall cause the Disbursing Agent to send a notice and a transmittal form (which shall specify that delivery shall be effected and risk of loss and title to the Senior Notes shall pass, except to the extent that the Senior Notes held by holders are evidenced by electronic entry, only

upon delivery of the Senior Notes to the Senior Note Trustee, and shall be in such form and have such other reasonable provisions as Reorganized Penn Traffic and the Senior Note Trustee may reasonably specify) to each holder of record of a Senior Note as of the Distribution Record Date advising such holder of the effectiveness of this Plan and the procedure for surrendering to the Senior Note Trustee such Senior Note in exchange for the New Penn Traffic Common Shares issuable to it pursuant to Section 2.8.(C) of this Plan.

At the close of business on the Distribution Record Date, the transfer ledgers in respect of the Senior Notes shall be closed, and there shall be no further changes in the record holders of the Senior Notes. The Reorganized Debtors, the Disbursing Agent and the Senior Note Trustee shall have no obligation to recognize any transfer of Senior Notes occurring after the Distribution Record Date. The Reorganized Debtors, the Disbursing Agent and the Senior Note Trustee shall be entitled instead to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date.

If a holder of a Senior Note is unable to surrender a Senior Note because it has been destroyed, lost or stolen, such holder may receive a distribution with respect to such Senior Note upon request to the Senior Note Trustee in an acceptable form with: (i) proof of such holder's title to such Senior Note; (ii) proof of the destruction or theft of such Senior Note, or an affidavit to the effect that the same has been lost and after diligent search cannot be found; and (iii) such indemnification as may reasonably be required by the Reorganized Debtors and the Senior Note Trustee to indemnify the Reorganized Debtors, the Disbursing Agent, the Senior Note Trustee, and all other persons deemed appropriate by the Senior Note Trustee and the Reorganized Debtors against any loss, action, suit or other claim whatsoever that may be made as a result of such holder's receipt of a distribution on account of such Senior Note under this Plan. Any holder that fails to comply with this Section 6.2.(A) before the first anniversary of the Effective Date shall be deemed to have forfeited all rights and claims and may not participate in any distribution under this Plan.

(B)     As soon as practicable after the Effective Date, Reorganized Penn Traffic shall cause the Disbursing Agent to send a notice to each holder of an Allowed Class 3 Claim and each holder of an Allowed Class 4 Claim advising such holder of the effectiveness of this Plan and requesting the completion and return of the Taxpayer Identification Request Form. The Class 3 or Class 4 distribution of any holder of an Allowed Class 3 Claim or an Allowed Class 4 Claim, as the case may be, who fails to return the Taxpayer Identification Request Form within 120 days following the mailing by the Disbursing Agent of the Taxpayer Identification Request Form shall be automatically deemed Unclaimed Property pursuant to Section 6.3.(H) of this Plan at the expiration of such 120 day period without further order of the Bankruptcy Court.

(C)     Subject to Section 6.2.(B) hereof, on the Initial Distribution Date, the Disbursing Agent shall make a pro rata distribution (determined in accordance with Section 6.2.(F) of this Plan) of the New Penn Traffic Common Shares allocable to Allowed Claims held by holders of Class 3 Claims as of the Distribution Record Date. Distributions of the New Penn Traffic Common Shares on account of the Senior Note Allowed Claim shall be made to the Senior Note Trustee. The Senior Note Trustee shall, in turn, as soon as is practicable, make distributions to the holders of the Senior Notes pursuant to the terms of the

26

Senior Note Indenture and the Plan so long as the holders are in compliance with Sections 6.2.(A) and (B) above.

(D)     Subject to Sections 6.2.(A) and (B) hereof, on any Interim Distribution Date, the Disbursing Agent shall make pro rata distributions (determined in accordance with Section 6.2.(F) of this Plan) of New Penn Traffic Common Shares to holders of Allowed Class 3 Claims pursuant to and consistent with resolutions of Disputed Claims since the Initial Distribution Date, or the previous Interim Distribution Date, as the case may be.

(E)     Subject to Sections 6.2.(A) and (B) hereof, on the Final Distribution Date, the Disbursing Agent shall make a pro rata distribution (determined in accordance with Section 6.2.(F) of this Plan) of New Penn Traffic Common Shares to holders of Allowed Class 3 Claims pursuant to and consistent with resolutions of Disputed Claims since the Initial Distribution Date (if there have been no distributions since the Initial Distribution Date), or the previous Interim Distribution Date, as the case may be.

(F)     The pro rata share of New Penn Traffic Common Shares distributable to any holder of an Allowed Class 3 Claim under Section 6.2.(C), 6.2.(D) or 6.2.(E) hereof shall equal (i) 10,000,000 multiplied by (ii) a fraction, the numerator of which is equal to such holder's Allowed Class 3 Claims as of the relevant distribution date under Section 6.2.(C), 6.2.(D) or 6.2.(E) hereof, as applicable, and the denominator of which is equal to 110% of the total amount of Allowed Class 3 Claims as of the Initial Distribution Date; provided, that for purposes of calculating such denominator, all Disputed Claims in Class 3 as of the Initial Distribution Date shall be treated as though such Claims were Allowed Claims in the Face Amount of such Claims as of the Distribution Record Date, regardless of whether such Claims are subsequently disallowed in whole or in part.

6.3.     Miscellaneous Distribution Provisions.

(A)     Fractional Plan Securities.  Notwithstanding any other provision of this Plan, only whole numbers of shares of New Penn Traffic Common Shares shall be issued. When any distribution on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Penn Traffic Common Shares that are not a whole number, the actual distribution of such Shares shall be rounded to the next higher or lower whole number of Shares as follows:  (i) fractions equal to or greater than ½ shall be rounded to the next higher whole number; and (ii) fractions less than ½ shall be rounded to the next lower number.  No consideration shall be provided in lieu of fractional shares that are rounded down.

(B)     Distributions on Non-Business Days.  Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

(C)     Post-Consummation Effect of Evidences of Claims or Interests. Notes, stock certificates and other evidence of Claims against or Interests in the Debtors shall, effective on the Effective Date, represent only the right to participate in the distributions contemplated by this Plan, if any, and shall not be valid or effective for any other purpose.

27

(D)     No Distribution in Excess of Allowed Amount of Claim.
Notwithstanding anything to the contrary herein, if any portion of a Claim is a Disputed Claim,
no payment or distribution provided hereunder shall be made on account of the portion of such
Claim that is a Disputed Claim unless and until such Disputed Claim becomes an Allowed
Claim, but the payment or distribution provided hereunder shall be made on account of the
portion of such Claim that is an Allowed Claim.

(E)     Disputed Payments. If any dispute arises as to the identity of the
holder of an Allowed Claim entitled to receive any distribution under this Plan, the Reorganized
Debtors may retain such distribution until its disposition is determined by a Final Order or
written agreement among the interested parties to such dispute.

(F)     Delivery of Distributions. Subject to Bankruptcy Rule 9010 and
Sections 6.2.(A) and (B) hereof, all distributions to any holder of an Allowed Claim, except the
holder of a Senior Note Allowed Claim, shall be made at the address of such holder as set forth
on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or
their agents, unless the Debtors have been notified in writing of a change of address, including,
without limitation, by the filing of a proof of claim by such holder that contains an address for
such holder different from the address reflected on such Schedules for such holder. All
distributions to any holder of a Senior Note Allowed Claim shall be made to the Senior Note
Trustee. In the event that any distribution to any holder is returned as undeliverable, no further
distributions shall be made in respect of such Claim unless and until the Disbursing Agent or the
Senior Note Trustee is notified in writing of such Claim holder's then current address, at which
time such distribution shall be made to such holder without interest; provided that such
distributions shall be deemed Unclaimed Property at the expiration of one hundred twenty (120)
days after the distribution date applicable to such distribution.

(G)     Estimation of Disputed Claims. The aggregate Face Amount of
(a) Disputed Claims and (b) Allowed Claims shall set the maximum allowable aggregate amount
of Claims in Class 3. The existence of a Disputed Claim in Class 3 shall not impair or impede
the making of a distribution to Allowed Claims in such Class or any other Class. If the Allowed
amount of any particular Disputed Claim is reconsidered under Section 502(j) of the Code and
Bankruptcy Rule 3008 and/or is Allowed in an amount that is greater than the estimated amount
of such Claim, or the ultimately Allowed amount of all Disputed Claims in Class 3 is greater
than the estimated aggregate Face Amount of such Claims, no claimant shall have recourse
against the Reorganized Debtors (or any property thereof), any distributions made to a creditor in
any other Class herein, or any distribution previously made on account of any Allowed Claim
(however, nothing herein shall modify any right of a holder of a reconsidered Claim under the
penultimate sentence of Section 502(j) of the Code).

(H)     Unclaimed Property. Holders of Allowed Class 3 Claims and
Allowed Class 4 Claims to Unclaimed Property shall cease to be entitled thereto, and such
Unclaimed Property shall revert to the Reorganized Debtors.

(I)     Voting of New Penn Traffic Common Shares. New Penn Traffic
Common Shares that are Unclaimed Property or reserved for Disputed Claims shall not be voted
at any meeting of the stockholders of Reorganized Penn Traffic.

Doc #:NY6:874288.7

(J)     Setoffs and Recoupment.  The Reorganized Debtors may, but shall not be required to, setoff or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Claim, claims of any nature that the Debtors or Reorganized Debtors may have against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim against the Debtors or the Reorganized Debtors shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any setoff or recoupment claim that the Debtors or the Reorganized Debtors may possess against such holder.

(K)     Compliance with Tax Requirements.  In connection with this Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to this Plan that may be necessary or appropriate to comply with such withholding and reporting requirements.  Notwithstanding any other provision of this Plan, each Person that has received any distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.

(L)     Disbursing Agent.  All distributions under the Plan shall be made by the Reorganized Debtors or the Disbursing Agent or such other entity as may be designated by the Reorganized Debtors as a Disbursing Agent, in consultation with the Post-Effective Date Committee, including the Senior Note Trustee.  No Disbursing Agent, including the Senior Note Trustee, shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court; and, in the event that the Disbursing Agent or the Senior Note Trustee is so otherwise ordered, all cost and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.  The amount of any reasonable fees and expenses incurred by the Disbursing Agent and the Senior Note Trustee on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement claims (including, without limitation, reasonable attorney fees and expenses) made by the Disbursing Agent and the Senior Note Trustee in making distributions under the Plan shall be paid in Cash by the Reorganized Debtors.

6.4.    Procedure For Determination of Claims and Interests.

(A)     Bar Date For Certain Administrative Claims.  All applications for final compensation of professional persons employed by the Debtors or the Creditors' Committee pursuant to orders entered by the Bankruptcy Court and on account of services rendered prior to the Effective Date, and all other requests for payment of Administrative Claims (except for ordinary course trade debt and customer deposits and credits incurred in the ordinary course of business after the Petition Date) shall be served on the Reorganized Debtors and Post-Effective Date Committee in accordance with Section 9.10. of this Plan and filed with the Bankruptcy Court, no later than 25 days after the Effective Date.  Any such claim that is not served and filed within this time period shall be discharged and forever barred.  Objections to any such application must be filed within 15 days after filing thereof.

(B)     Objections To Claims.  Objections to any Claim filed by any party other than the Debtors (other than Administrative Claims governed by Section 6.4.(A) of this

Plan) must be filed no later than twenty (20) days before the Effective Date; provided, however, that the Reorganized Debtors and only the Reorganized Debtors may file objections to Claims subsequent to the Effective Date through and including sixty (60) days after the Effective Date. In accordance with Section 6.3.(D) of this Plan, payment or distribution shall be made on account of all or any portion of such Claim that is an Allowed Claim. To the extent any property is distributed to an entity on account of a Claim that is not an Allowed Claim, such property shall be held in trust for and shall promptly be returned to the Reorganized Debtors. On and after the Effective Date, the Reorganized Debtors shall have authority to continue to prosecute, settle or withdraw objections to Claims and shall be entitled to compromise or settle any Disputed Claim in accordance with Section 5.2. of this Plan.

## ARTICLE VII

## PENN TRAFFIC CREDITOR TRUST

7.1.    Appointment of Trustee. The Trustee for the Penn Traffic Creditor Trust shall be designated by the Creditors' Committee, subject to the approval of the Bankruptcy Court and the consent of the Debtors, which consent shall not be unreasonably withheld. The Trustee shall be independent of the Debtors and the Reorganized Debtors. The Creditors' Committee shall file a notice on a date that is not less than ten (10) days prior to the Confirmation Hearing designating the Person whom it has selected as Trustee and seeking approval of such designation. The Person designated as Trustee shall file an affidavit demonstrating that such Person is disinterested as defined by Section 101(14) of the Bankruptcy Code. If approved by the Bankruptcy Court, the Person so designated shall become the Trustee on the Effective Date. The Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Trust Agreement.

7.2.    Transfer of Trust Assets to the Penn Traffic Creditor Trust.

(A)    On the Effective Date, the Debtors' Estates shall transfer and shall be deemed to have irrevocably transferred the Trust Assets to the Penn Traffic Creditor Trust, for and on behalf of the beneficiaries of the Trust, with no reversionary interest in the Debtors or the Reorganized Debtors. The foregoing transfer of Trust Assets (a) is a legal, valid, and effective transfer of property, (b) shall not be affected by any provision in any contract or other agreement between the Debtors and any Person, including without limitation, any Person that is or becomes a defendant with respect to any Trust Claims asserted by the Penn Traffic Creditor Trust, purporting to prohibit the assignment of claims by any of the Debtors or their Estates, and such anti-assignment provisions shall be deemed void as they relate to the transfer of Trust Assets, (c) shall vest the Penn Traffic Creditor Trust with good title to such property, free and clear of all liens, charges, Claims, encumbrances, or interests, except as expressly provided in this Plan or the Confirmation Order, (d) does not and shall not constitute avoidable transfers under the Bankruptcy Code or under applicable non-bankruptcy law, (e) does not and shall not subject the Penn Traffic Creditor Trust to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including, without limitation, any laws affecting successor or transferee liability, or a reduction in any claim by way of setoff, recoupment or any other similar defenses or counterclaims.

Doc #:NY6:874288.7

(B)     Upon such transfer, the Debtors, the Debtors' Estates, the Disbursing Agent and the Reorganized Debtors shall have no other or further rights or obligations with respect thereto.  Notwithstanding the foregoing, the Reorganized Debtors shall make available to the Trustee and the Trustee Professionals (as defined below) reasonable access during normal business hours, upon reasonable notice, to personnel and books and records of the Debtors and/or Reorganized Debtors to enable the Trustee to perform the Trustee's tasks under the Trust Agreement and this Plan, and the Debtors and the Reorganized Debtors shall provide the Trustee, the Trust Advisory Board and/or the Trust Professionals with copies of all documents delivered to the United States Securities and Exchange Commission or any other governmental agency, department or unit in connection with the subject matter of the Trust Claims and shall provide reasonable access to evidence gathered and work product developed in connection with the subject matter of the Trust Claims, as more specifically set forth in the Trust Agreement; provided, however, that the Reorganized Debtors shall not be required to incur expenditures in response to such requests determined by them to be unreasonable.  The Reorganized Debtors shall not be entitled to compensation or reimbursement (including reimbursement for professional fees) with respect to fulfilling their obligations as set forth in this Section.  The Bankruptcy Court retains jurisdiction to determine the reasonableness of either a request for assistance and/or a related expenditure.  Any requests for assistance shall not interfere with the Reorganized Debtors' business operations.

(C)     On the Effective Date, the Penn Traffic Creditor Trust shall succeed, for the benefit of beneficiaries of the Penn Traffic Creditor Trust, to all of the rights, privileges and immunities with respect to the Trust Assets including, without limitation, the attorney-client and all other evidentiary privileges, and the time periods in which Trust Claims may be brought under Sections 108 and 546 of the Bankruptcy Code or otherwise.

7.3.     The Penn Traffic Creditor Trust.

(A)     Without any further action of the directors or shareholders of the Debtors, on the Effective Date, the Trust Agreement, substantially in the form of Exhibit 3 to this Plan, shall become effective.  The Trustee shall accept the Penn Traffic Creditor Trust and sign the Trust Agreement on the Effective Date and the Penn Traffic Creditor Trust shall then be deemed created and effective.

(B)     Interests in the Penn Traffic Creditor Trust shall be uncertificated and shall be non- transferable except upon death of the interest holder or by operation of law. Holders of interests in the Penn Traffic Creditor Trust shall have no voting rights with respect to such interests.  Unless the Trustee asserts an insurance claim in writing, or commences an action or a proceeding asserting a Trust Claim within three (3) years from the Effective Date, in which case the Trust shall continue until such action or proceeding is concluded, the Penn Traffic Creditor Trust shall have a term of three (3) years from the Effective Date, without prejudice to the rights of the Trust Advisory Board to seek Bankruptcy Court approval to extend such term conditioned upon the Penn Traffic Creditor Trust's not then becoming subject to the Exchange Act (the "Trust Term").  The terms of the Trust may be amended by the Trustee or the Reorganized Debtors to the extent necessary to ensure that the Trust shall not become subject to the Exchange Act.

Doc #:NY6:874288.7

(C)     The Trustee shall have full authority to take any steps necessary to administer the Trust Agreement, including, without limitation, the duty and obligation to liquidate Trust Assets, to make distributions therefrom in accordance with the provisions of this Plan and, if authorized by majority vote of those members of the Trust Advisory Board authorized to vote, to pursue and settle any Trust Claims.  Upon such assignment, the Trustee, on behalf of the Penn Traffic Creditor Trust, shall assume and be responsible for any responsibilities, duties, and obligations of the Debtors with respect to the subject matter of the assignments, and the Debtors, the Disbursing Agent, and the Reorganized Debtors shall have no further rights or obligations with respect thereto.

(D)     All costs and expenses associated with the administration of the Penn Traffic Creditor Trust, including those rights, obligations and duties described in this Plan, shall be the responsibility of and paid by the Penn Traffic Creditor Trust.  Notwithstanding the preceding sentence, the Reorganized Debtors shall contribute the following to the Penn Traffic Creditor Trust to be utilized to pay the costs and expenses associated with the administration of the Penn Traffic Creditor Trust (the "Funding Contributions"):  (i) $300,000 on the Effective Date and (ii) four (4) quarterly installments in the amount of $50,000 each to be paid by the Reorganized Debtors to the Penn Traffic Creditor Trust beginning on the three (3) month anniversary of the Effective Date ((i) and (ii) above, collectively, the "Initial Installments").  If the Reorganized Debtors fail to pay any of the Initial Installments within five (5) business days after written notice of the Trust to the Reorganized Debtors, all remaining Initial Installments shall become immediately due and payable to the Penn Traffic Creditor Trust.  The Trustee shall have the right to seek an order of the Bankruptcy Court requiring the Reorganized Debtors to make additional Funding Contributions in excess of the foregoing Initial Installments at any time during the Trust Term in the maximum aggregate amount of $500,000 in excess of the Initial Installments.  As of the termination of the Penn Traffic Creditor Trust, any unused Funding Contributions shall be disposed of at the discretion of the Trustee, as authorized by the Trust Advisory Board, by majority vote.

(E)     The Trustee may retain such law firms, accounting firms, experts, advisors, consultants, investigators, appraisers, auctioneers or other professionals as it may deem necessary (collectively, the "Trustee Professionals"), in its sole discretion, to aid in the performance of its responsibilities pursuant to the terms of this Plan including, without limitation, the liquidation and distribution of Trust Assets.

(F)     For federal income tax purposes, it is intended that the Penn Traffic Creditor Trust be classified as a liquidating trust under Section 301.7701 4 of the Procedure and Administration Regulations and as a grantor trust subject to the provisions of Subchapter J, Subpart E of the Internal Revenue Code of 1986, as amended, that is owned by its beneficiaries as grantors. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution of an undivided interest in the Trust Assets and then contributed such interests to the Penn Traffic Creditor Trust.

(G)     The Trustee shall be responsible for filing all federal, state and local tax returns for the Penn Traffic Creditor Trust if necessary.

Doc #:NY6:874288.7

7.4.  The Trust Advisory Board.

(A)  The Trust Advisory Board shall be comprised of three (3) members which shall be designated by the Creditors' Committee. The Creditors' Committee shall give the Debtors written notice of the identities of such members and file such notice with the Bankruptcy Court on a date that is not less than ten (10) days prior to the Confirmation Hearing; provided, however, that if the Creditors' Committee fails to file and give such notice, Penn Traffic shall designate the members of the Trust Advisory Board by announcing their identities at the Confirmation Hearing. The Trustee shall consult regularly with the Trust Advisory Board when carrying out the purpose and intent of the Penn Traffic Creditor Trust. Members of the Trust Advisory Board shall be entitled to reimbursement of the reasonable and necessary expenses incurred by them in carrying out the purpose of the Trust Advisory Board, which shall be payable by the Penn Traffic Creditor Trust.

(B)  In the case of an inability or unwillingness of any member of the Trust Advisory Board to serve, such member may be replaced by designation of the remaining members of the Trust Advisory Board. If any position on the Trust Advisory Board remains vacant for more than thirty (30) days, such vacancy shall be filled within fifteen (15) days thereafter by the designation of the Trustee without the requirement of a vote by the other members of the Trust Advisory Board until a vacancy on the Trust Advisory Board is filled, the Trust Advisory Board shall function in its reduced number.

(C)  Upon the certification by the Trustee that all Trust Assets have been distributed, abandoned or otherwise disposed of, the members of the Trust Advisory Board shall resign their positions, whereupon they shall be discharged from further duties and responsibilities.

(D)  The Trust Advisory Board shall, by majority vote, approve all settlements of Trust Claims which the Trustee or any member of the Trust Advisory Board may propose, provided, however, that (i) no member of the Trust Advisory Board may cast a vote with respect to any Trust Claim to which it is a party; and (ii) the Trustee may seek Bankruptcy Court approval of a settlement of a Trust Claim if the Trust Advisory Board fails to act on a proposed settlement of such Trust Claim within thirty (30) days of receiving notice of such proposed settlement by the Trustee or as otherwise determined by the Trustee.

(E)  The Trust Advisory Board may, by majority vote, authorize the Trustee to invest the corpus of the Trust in prudent investments other than those described in Section 345 of the Bankruptcy Code.

(F)  The Trust Advisory Board may remove the Trustee in its discretion. In the event the requisite approval is not obtained, the Trustee may be removed by the Bankruptcy Court for cause shown. In the event of the resignation or removal of the Trustee, the Trust Advisory Board shall, by majority vote, designate a person to serve as successor Trustee. The successor Trustee shall file an affidavit demonstrating that such Person is disinterested as defined by Section 101(14) of the Bankruptcy Code.

Doc #:NY6:874288.7

(G)     Notwithstanding anything to the contrary in this Plan, neither the Trust Advisory Board nor any of its members, designees, counsel, financial advisors or any duly designated agent or representatives of any such party shall be liable for the act, default or misconduct of any other member of the Trust Advisory Board, nor shall any member be liable for anything other than such member's own gross negligence or willful misconduct. The Trust Advisory Board may, in connection with the performance of its duties, and in its sole and absolute discretion, consult with its counsel, accountants or other professionals, and shall not be liable for anything done or omitted or suffered to be done in accordance with such advice or opinions. If the Trust Advisory Board determines not to consult with its counsel, accountants or other professionals, it shall not be deemed to impose any liability on the Trust Advisory Board, or its members and/or designees.

(H)     The Trust Advisory Board shall govern its proceedings through the adoption of bylaws, which the Trust Advisory Board shall adopt by majority vote. No provision of such bylaws shall supersede any express provision of this Plan or the Trust Agreement.

7.5.    Distributions of Trust Recoveries. Pro-rata distributions of the Trust Recoveries to holders of Allowed Unsecured Claims in accordance with their interests in the Penn Traffic Creditor Trust as set forth in this Plan may be made at least semi-annually beginning with a calendar quarter that is not later than the end of the second calendar quarter after the Effective Date; provided, however, that the Trustee shall not be required to make any such semiannual distribution in the event that the aggregate proceeds and income available for distribution to such Claimholders is not sufficient, in the Trustee's discretion (after consultation with the Trust Advisory Board) to economically distribute monies, and in any case, in connection with any interim (as opposed to final) distribution, the Trustee shall retain at least the amount of funds paid to the Penn Traffic Creditor Trust pursuant to Section 7.3.(D) of this Plan. The Trustee shall make diligent and continuing efforts to prosecute or settle the Trust Claims, make timely distributions, and not unduly prolong the duration of the Penn Traffic Creditor Trust. For the purpose of calculating the amount of the Trust Recoveries to be distributed to holders of Allowed Class 3 Claims, all Disputed Claims in Class 3 shall be treated as though such claims shall be Allowed Claims in the Face Amount of such claims on the relevant distribution date.

## ARTICLE VIII

## EFFECT OF THIS PLAN ON CLAIMS AND INTERESTS

8.1.    Revesting of Assets. Except as otherwise explicitly provided in this Plan, on the Effective Date, all property of the Estates, to the fullest extent of Section 541 of the Code, and any and all other rights and assets of the Debtors of every kind and nature shall revest in the Reorganized Debtors free and clear of all Liens, Claims and Interests other than (i) those Liens, Claims and Interests retained or created pursuant to this Plan or any document entered into in connection with the transactions described in this Plan, (ii) Liens that have arisen subsequent to the Petition Date on account of taxes that arose subsequent to the Petition Date, and (iii) Trust Assets, which shall be transferred to the Penn Traffic Creditor Trust pursuant to Article VII of this Plan.

8.2.     Discharge of Claims and Termination of Interests.  As of the Effective Date, except as provided in the Confirmation Order, the rights afforded under this Plan and the treatment of Claims and Interests under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims and satisfaction or termination of all Interests, including any interest accrued on Claims from and after the Petition Date.  Except as otherwise provided in this Plan, including Section 5.14., or the Confirmation Order, Confirmation shall, as of the Effective Date: (i) discharge the Debtors from all Claims or other debts that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Code, whether or not (x) a proof of claim based on such debt is filed or deemed filed pursuant to Section 501 of the Code, (y) a Claim based on such debt is Allowed pursuant to Section 502 of the Code or (z) the holder of a Claim based on such debt has accepted this Plan; and (ii) satisfy, terminate or cancel all Interests and other rights of equity security holders in the Debtors. As of the Effective Date, except as otherwise provided in this Plan, including Section 5.14. or the Confirmation Order, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, or their respective successors or property, any other or further Claims, demands, debts, rights, causes of action, liabilities or equity interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as provided in this Plan, including Section 5.14., or the Confirmation Order, the Confirmation Order shall be a judicial determination, as of the Effective Date, of discharge of all such Claims and other debts and liabilities against the Debtors and satisfaction, termination or cancellation of all Interests and other rights of equity security holders in the Debtors, pursuant to Sections 524 and 1141 of the Code, and such discharge shall void any judgment obtained against the Debtors or the Reorganized Debtors at any time, to the extent that such judgment relates to a discharged Claim.

**8.3.     Injunctions.**

(A)     **Except as otherwise provided in this Plan, including Section 5.14., or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an Interest or other right of an equity security holder that is terminated pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts or liabilities or terminated Interests or rights: (i) commencing or continuing in any manner any action or other proceeding against the Debtors or the Reorganized Debtors or their respective property; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors or the Reorganized Debtors or their respective property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtors or the Reorganized Debtors or their respective property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors or the Reorganized Debtors or their respective property; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.**

(B)     **Except as otherwise provided in this Plan, including Section 5.14., as of the Effective Date, all Persons that have held, currently hold or may hold a Claim, demand, debt, right, cause of action or liability that is released pursuant to**

this Plan are permanently enjoined from taking any of the following actions on account of such released Claims, demands, debts, rights, causes of action or liabilities:  (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any released entity; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.

(C)     In exchange for the distributions pursuant to this Plan, except as otherwise provided in this Plan, including Section 5.14., each holder of an Allowed Claim receiving such distribution pursuant to this Plan shall be deemed to have specifically consented to the injunctions set forth in this Section 8.3.

8.4.     <u>Limitation of Liability</u>.  Subject in all respects to Section 8.7. of this Plan, none of the Debtors, the Reorganized Debtors, the Creditors' Committee, the Post-Effective Date Committee, the Trust Advisory Board, the Pre-Petition Secured Lenders, the DIP Lenders, the Senior Note Trustee nor any of their respective directors, officers, employees, members, attorneys, investment bankers, restructuring consultants and financial advisors, nor any other professional Persons employed by any of them (collectively, the "Exculpated Persons"), shall have or incur any liability to any Person for any act taken or omission from and after the Petition Date in connection with, relating to or arising out of the Cases, the management and operation of the Debtors, the formulation, negotiation, implementation, confirmation or consummation of this Plan, the First Amended Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with this Plan.  The Exculpated Persons shall have no liability to any Debtor, holder of a Claim, holder of an Interest, other party in interest in the Cases or any other Person for actions taken or not taken in connection with, relating to or arising out of the Cases, the management and operation of the Debtors, this Plan or the property to be distributed under this Plan, including, without limitation, failure to obtain Confirmation of this Plan or to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects such Exculpated Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities in the Cases, the management and operation of the Debtors and under this Plan.  Nothing in this paragraph shall exculpate, discharge, release or relieve any Person in a manner contrary to the language of Section 5.14. of this Plan.

8.5.     <u>Releases</u>.

(A)     Subject in all respects to Section 8.7. of this Plan, on the Effective Date, the Debtors and the Reorganized Debtors on behalf of themselves and as representatives of the Estates, release unconditionally, and are hereby deemed to release unconditionally, (i) each of the Debtors' officers and directors who served at any time during the Cases, (ii) any person that elected such directors to the extent of alleged liability for actions or inactions of such directors, (iii) the members of the Creditors' Committee, (iv) the DIP Lenders, (v) the Pre-Petition Secured Lenders, (vi) the Senior Note Trustee and (vii) the attorneys, investment bankers, restructuring consultants and financial

advisors of the foregoing, including the Debtors and the Reorganized Debtors, from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (including, without limitation, those arising under the Code), whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based on any act, omission, transaction, event or other occurrence taking place on or after the Petition Date through and including the Effective Date in connection with, relating to or arising out of the Cases, the management and operation of the Debtors, the formulation, negotiation, implementation, confirmation or consummation of this Plan, the First Amended Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with this Plan; provided, however, that nothing in this Section 8.5.(A) shall (i) be construed to release or exculpate any person or entity from fraud, willful misconduct or criminal conduct or (ii) limit the liability of the professionals of the Debtors, the Reorganized Debtors or the Creditors' Committee to their respective clients pursuant to DR6-102 of the Code of Professional Responsibility; and, provided, further, that nothing in this Section 8.5.(A) shall release the obligation of any directors and officers of the Debtors under any loans due and owing by such party to the Debtors.

(B)     Subject in all respects to Section 8.7. of this Plan, on the Effective Date, the Debtors and the Reorganized Debtors on behalf of themselves and as representatives of the Estates, release unconditionally, and are hereby deemed to release unconditionally, (i) each of the Debtors' former and present officers and directors, (ii) any Person that elected such directors to the extent of alleged liability for actions or inactions of such directors, (iii) the Pre-Petition Secured Lenders, (iv) the Senior Note Trustee and (v) the attorneys, investment bankers, restructuring consultants and financial advisors of the foregoing, including the Debtors and the Reorganized Debtors (collectively, the "Pre-Petition Releasees") from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (including, without limitation, those arising under the Code), whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence taking place before the Petition Date in connection with or relating to Penn Traffic or any of its direct or indirect subsidiaries (the "Pre-Petition Released Matters"); provided, however, that nothing in this Section 8.5.(B) shall (i) be construed to release or exculpate any person or entity from fraud, willful misconduct or criminal conduct or (ii) limit the liability of the professionals of the Debtors or the Reorganized Debtors to their respective clients pursuant to DR6-102 of the Code of Professional Responsibility; and, provided, further, that nothing in this Section 8.5.(B) shall release the obligation of any directors and officers of the Debtors under any loans due and owing by such party to the Debtors.

(C)     On the Effective Date, each holder of a Claim that is entitled to vote on this Plan shall be deemed to have unconditionally released the Pre-Petition Releasees from the Pre-Petition Released Matters; provided, however, that each holder of a Claim entitled to vote on this Plan may elect, by checking the box provided on the Ballot, not to grant the releases set forth in this Section 8.5.(C).

(D)     The Confirmation Order shall contain a permanent injunction to effectuate the releases granted in this Section 8.5.

**8.6.     Retention and Enforcement, and Release, Of Causes Of Action.** Except as otherwise set forth in this Plan, pursuant to Section 1123(b)(3)(B) of the Code, on the Effective Date, all Causes of Action, including, without limitation, the Causes of Action identified on Plan Schedule 8.6, to be filed on or before the Exhibit Filing Date but excluding Trust Claims, shall become the property of the Reorganized Debtors and the Reorganized Debtors shall retain all Causes of Action that the Debtors had or had power to assert on behalf of their Estates immediately prior to the Effective Date, whether or not such Causes of Action are listed on Plan Schedule 8.6, and may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of such Causes of Action; provided, however, that any and all of the Debtors' claims and causes of action arising under Section 547 of the Code that are not the subject of pending litigation as of the Effective Date (collectively, the "Preference Actions") shall be waived, abandoned, discharged and released pursuant to this Plan. Except with respect to Preference Actions and except as otherwise set forth in this Plan, nothing contained in this Plan shall constitute a release, satisfaction or settlement of the Causes of Action or any Trust Claim, nor constitute a waiver of the rights, if any, of the Debtors, the Reorganized Debtors or the Penn Traffic Creditor Trust to a jury trial with respect to any Cause of Action or any Trust Claim, or objection to any Claim or Interest, and nothing in this Plan or the Confirmation Order, including the allowance of any Claim of a defendant in any Cause of Action or any Trust Claim, shall constitute a waiver or release of any Cause of Action or Trust Claim under the doctrine of res judicata nor shall any Cause of Action or Trust Claim be barred or limited by any estoppel, whether judicial, equitable or otherwise.

**8.7.     Exclusions and Limitations on Exculpation, Indemnification, and Releases.** Notwithstanding anything in this Plan to the contrary, including without limitation Section 8.5., no provision of this Plan or the Confirmation Order, including, without limitation, any exculpation, indemnification or release provision, shall modify, release, or otherwise limit the liability of (i) any Person with respect to any Trust Claim, or (ii) any Person not specifically released hereunder, including, without limitation, any Person that is a co-obligor or joint tortfeasor of a Released Party or that is otherwise liable under theories of vicarious or other derivative liability. The Reorganized Debtors shall not provide indemnification on account of (i) and (ii) above.

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

9.1.     Retention of Jurisdiction. Following the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising from or relating to the Cases to the fullest extent of applicable law, including, without limitation:

(A)     To determine the allowability, classification and priority of Claims and Interests upon objection, or to estimate, pursuant to Section 502(c) of the Code, the amount of any Claim that is or is anticipated to be contingent or unliquidated as of the Effective Date;

(B)     To construe and to take any action authorized by the Code and requested by the Reorganized Debtors or any other party in interest to enforce this Plan and the documents and agreements filed in connection with this Plan, issue such orders as may be necessary for the implementation, execution and consummation of this Plan, including, without limiting the generality of the foregoing, orders to expedite regulatory decisions for the implementation of this Plan and to ensure conformity with the terms and conditions of this Plan, such documents and agreements and other orders of the Bankruptcy Court, notwithstanding any otherwise applicable non-bankruptcy law;

(C)     To determine any and all applications for allowance of compensation and expense reimbursement of professionals retained by the Debtors, the Reorganized Debtors or the Creditors' Committee, and for members of the Creditors' Committee, for periods on or before the Effective Date, and to determine any other request for payment of administrative expenses;

(D)     To determine all matters that may be pending before the Bankruptcy Court on or before the Effective Date;

(E)     To resolve any dispute regarding the implementation or interpretation of this Plan, or any related agreement or document that arises at any time before the Cases are closed, including determination, to the extent a dispute arises, of the entities entitled to a distribution within any particular Class of Claims and of the scope and nature of the Reorganized Debtors' obligations to cure defaults under assumed contracts, leases, franchises and permits;

(F)     To determine any and all matters relating to the rejection, assumption or assignment of executory contracts or unexpired leases entered into prior to the Petition Date, the nature and amount of any Cure required for the assumption of any executory contract or unexpired lease, and the allowance of any Claim resulting therefrom;

(G)     To determine all applications, adversary proceedings, contested matters and other litigated matters that were brought or that could have been brought in the Bankruptcy Court on or before the Effective Date;

(H)     To determine matters concerning local, state and federal taxes in accordance with Sections 346, 505 and 1146 of the Code, and to determine any tax claims that may arise against the Debtors or the Reorganized Debtors as a result of the transactions contemplated by this Plan;

(I)     To modify this Plan pursuant to Section 1127 of the Code or to remedy any apparent nonmaterial defect or omission in this Plan, or to reconcile any nonmaterial inconsistency in this Plan so as to carry out its intent and purposes; and

(J)     To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Penn Traffic Creditor Trust and the Post-Effective Date Trade Lien Program, including any requests by the Trustee pursuant to Section 7.3.(D) of this Plan for additional Funding Contributions, and to issue, at the request of

39

the Trustee, orders pursuant to Bankruptcy Rule 2004 relating to Trust Claims to use in the administration of the Creditor Trust.

Notwithstanding anything contained herein to the contrary, the Bankruptcy Court retains exclusive jurisdiction to adjudicate Trust Claims and to hear and determine any disputes related to Trust Claims and any motions to compromise or settle such Trust Claims; provided, however, that the Trustee, on behalf of the Penn Traffic Creditor Trust, shall have authority to bring Trust Claims in any court of competent jurisdiction.

From the Confirmation Date through the Effective Date, the Bankruptcy Court shall retain jurisdiction with respect to each of the foregoing items and all other matters that were subject to its jurisdiction prior to the Confirmation Date.

9.2.    Terms Binding. Upon the entry of the Confirmation Order, all provisions of this Plan, including all agreements, instruments and other documents filed in connection with this Plan and executed by the Debtors or the Reorganized Debtors in connection with this Plan, shall be binding upon the Debtors, the Reorganized Debtors, all Claim and Interest holders and all other Persons that are affected in any manner by this Plan. Subject to the occurrence of the Effective Date, all agreements, instruments and other documents filed in connection with this Plan shall have full force and effect, and shall bind all parties thereto as of the entry of the Confirmation Order, whether or not such exhibits actually shall be executed by parties other than the Debtors or the Reorganized Debtors, or shall be issued, delivered or recorded on the Effective Date or thereafter.

9.3.    Successors and Assigns. The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor or assignee of such Person.

9.4.    Confirmation Order and Plan Control. Except as otherwise provided in this Plan, in the event of any inconsistency between this Plan and the First Amended Disclosure Statement, any exhibit to this Plan or any other instrument or document created or executed pursuant to this Plan, this Plan shall control. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

9.5.    Governing Law. Except to the extent that the Code or any other federal law is applicable or to the extent the law of a different jurisdiction is validly elected by the Debtors, the rights, duties and obligations arising under this Plan shall be governed in accordance with the substantive laws of the United States of America and, to the extent federal law is not applicable, the laws of the State of New York.

9.6.    Severability. If the Bankruptcy Court determines at the Confirmation Hearing that any material provision of this Plan is invalid or unenforceable, such provision, subject to Section 1127 of the Code, shall be severable from this Plan and shall be null and void, and, in such event, such determination shall in no way limit or affect the enforceability or operative effect of any or all other portions of this Plan.

Doc #:NY6:874288.7

9.7. <u>Incorporation by Reference</u>. Each Exhibit or Schedule to this Plan is incorporated herein by reference.

9.8. <u>Modifications to this Plan</u>. Upon the mutual consent of the Debtors and the Creditors' Committee, this Plan, and any Exhibit or Schedule to this Plan, may be amended or modified at any time prior to the Confirmation Date in accordance with the Code and Bankruptcy Rules.

9.9. <u>Revocation, Withdrawal or Non-Consummation</u>. The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Effective Date. If the Debtors revoke or withdraw this Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan, any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), the assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be null and void; <u>provided</u>, <u>however</u>, that all orders of the Bankruptcy Court and all documents executed pursuant thereto, except the Confirmation Order, shall remain in full force and effect. In such event, nothing contained herein, and no acts taken in preparation for consummation of this Plan, shall be deemed to constitute a waiver or release of any Claims by or against any of the Debtors or any other Person, to prejudice in any manner the rights of any of the Debtors or any Person in any further proceedings or to constitute an admission of any sort by any of the Debtors or any other Person.

9.10. <u>Notice</u>. Any notice required or permitted to be provided under this Plan shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery or (c) overnight delivery service, to be addressed as follows:

If to the Debtors:

> The Penn Traffic Company
> 1200 State Fair Boulevard
> Syracuse, New York  13221-4737
> <u>Attention</u>:  Francis D. Price, Esq.

With a copy to:

> Paul, Weiss, Rifkind, Wharton & Garrison LLP
> 1285 Avenue of the Americas
> New York, New York 10019-6064
> <u>Attention</u>:  Kelley A. Cornish, Esq.

Doc #:NY6:874288.7

If to the Creditors' Committee/Post-Effective Date Committee:

    Otterbourg, Steindler, Houston & Rosen, P.C.
    230 Park Avenue
    New York, New York 10169-0075
    <u>Attention</u>: Scott L. Hazan, Esq.
              Glenn B. Rice, Esq.
              Enid Nagler Stuart, Esq.

If to the DIP Lenders:

    Kaye Scholer LLP
    425 Park Avenue
    New York, New York 10022-3598
    <u>Attention</u>: Alfred J. Bianco, Esq.
              Marc D. Rosenberg, Esq.

Dated: February 4, 2005

        Respectfully submitted,

        THE PENN TRAFFIC COMPANY
        DAIRY DELL, INC.
        PENNY CURTISS BAKING COMPANY, INC.
        BIG M SUPERMARKETS, INC.
        SUNRISE PROPERTIES, INC.,
        PENNWAY EXPRESS, INC.
        BIG BEAR DISTRIBUTION COMPANY
        BRADFORD SUPERMARKETS, INC.
        P&C FOOD MARKETS, INC. OF VERMONT
        ABBOTT REALTY CORPORATION
        COMMANDER FOODS, INC.
        P.T. DEVELOPMENT LLC
        PT FAYETTEVILLE/UTICA LLC

        Debtors and Debtors-in-Possession

By:       /s/ Robert J. Chapman
            Robert J. Chapman
        President and Chief Executive Officer of
        The Penn Traffic Company and Authorized Signatory

42

# **PLAN EXHIBIT 1**

AMENDED CERTIFICATES OF INCORPORATION

# **PLAN EXHIBIT 2**

AMENDED BY-LAWS

# **PLAN EXHIBIT 3**

TRUST AGREEMENT

## PLAN SCHEDULE 1.33

### LIST OF DEBTORS' ENTITIES, JURISDICTION OF
### INCORPORATION AND CASE NUMBER

| Name | Case Number | Jurisdiction of Incorporation |
|---|---|---|
| The Penn Traffic Company | 03-22945 (ASH) | Delaware Corporation |
| Dairy Dell, Inc. | 03-22947 (ASH) | Pennsylvania Corporation |
| Penny Curtiss Baking Company, Inc. | 03-20312 (ASH) | New York Corporation |
| Big M Supermarkets | 03-22946 (ASH) | New York Corporation |
| Sunrise Properties, Inc. | 03-22949 (ASH) | Pennsylvania Corporation |
| Pennway Express, Inc. | 03-22948 (ASH) | Pennsylvania Corporation |
| Big Bear Distribution Company | 03-22950 (ASH) | Delaware Corporation |
| Commander Foods, Inc. | 03-22951 (ASH) | New York Corporation |
| Abbott Realty Corporation | 03-22952 (ASH) | Vermont Corporation |
| Bradford Supermarkets, Inc. | 03-22955 (ASH) | Vermont Corporation |
| P&C Food Markets, Inc. of Vermont | 03-22954 (ASH) | Vermont Corporation |
| PT Development, LLC | 03-22956 (ASH) | New York Limited Liability Corporation |
| PT Fayetteville/Utica, LLC | 03-22957 (ASH) | New York Limited Liability Corporation |

# PLAN SCHEDULE 1.35

## DEMME SUCCESS BONUS DISTRIBUTIONS

# PLAN SCHEDULE 1.63

## KZCS SUCCESS FEE DISTRIBUTIONS

Doc #:NY6:874288.7

# **PLAN SCHEDULE 1.79**

## PJSC REORGANIZATION FEE DISTRIBUTIONS

# **PLAN SCHEDULE 3.1**

## CONTRACTS AND LEASES TO BE REJECTED

## **PLAN SCHEDULE 3.2**

CONTRACTS AND LEASES TO BE ASSUMED

# **PLAN SCHEDULE 5.6**

LIST OF OFFICERS AND DIRECTORS OF REORGANIZED PENN TRAFFIC
WITH THEIR AFFILIATIONS AND COMPENSATION

# **PLAN SCHEDULE 5.7**

## EXIT FINANCING FACILITY

## PLAN SCHEDULE 5.8

SALE LEASEBACK TRANSACTION

# PLAN SCHEDULE 5.16

## TERMS AND CONDITIONS OF POST-EFFECTIVE DATE TRADE LIEN PROGRAM

# PLAN SCHEDULE 8.6

## LIST OF PRESERVED CAUSES OF ACTION

Claims by the Debtors against the following vendors for, <u>inter alia</u>, monies due and owing on account of prepayments, overpayments, allowances, rebates or other amounts due for which the Debtors have not received payment:

| | | |
|---|---|---|
| A & M Cleaning Pro. | Giovanni Food Co. Inc. | Painter Distributing |
| A D G | Glaxosmith Kline | Palermo's Frozen Pizza |
| A L George Inc. | Glazersdistributor | Palm Bay Imports |
| A Sweet Occasion | Globalhousehold | Palmer Candy Co. |
| A.P. Deauville, LLC | Glory Foods Inc. | Palmyra Bologna |
| AAA Restaurant & Equipment | Goetze Candy Co Inc. | Pameco Syracuse |
| Abbott Foods | Gold Kist Inc. | Panarama Inc. |
| Abbott Laboratories | Golden Books Pub. | Panasonic Industrial Co. |
| Aberfoylesprings | Good Housekeeping | Paper Mate |
| Absolut Marketing Inc. | Good Humor-Breyers L.C. | Papermagicgroup |
| Ace Bayou Corp. | Goodmark Foods Inc. | PAR Group |
| Ach Food Companies, Inc. | Gorton Co. | Paradise Inc. |
| Acme United Corporation | Gourmet Boutique, LLC | Paramount Farms |
| Acmeinternation | GPX Inc. | Parco Foods, L.L.C. |
| Adg | Graciousliving | Paris Accessories, Inc. |
| Adirondack Beverages | Graeter's Ice Cream | Paris Business Products |
| Adirondack Maple Farms | Grand-Bay Foods | Parispresents |
| Advance Publishers | Grandma Brown's Beans Inc. | Park Farms |
| Advanced Fire Protection Inc. | Granprixelectro | Parkavenue |
| Advanced Medical Optics | Gravy Master Co. | Parmalat USA Corp. |
| Advanced Research Laboratories | Great American Herb Co. | Par-Pak Ltd. |
| Advanced Vision | Great Lakes Cheese Company, Inc. | Party Source |
| Advantage Sales & Marketing | Great Lakes Kraut Co. Llc | Pasta Fresca |
| Aep Industries Inc. | Great Northern Products | Pasturized Eggs |
| Aidell's Sausage | Greatlakesscrip | Patriot |
| Aim Corrugated Container Corp. | Green Bay Dressed Beef | Pbm Products |
| AJM Packaging | Green Pharmaceuticals | PDK Worldwide Enterprises, Inc. |
| Akpharma Inc. | Griffith Energy | Pearson Candy Co. |
| Alamance Foods Inc. | Gristmill | Pennant Fruit Products Inc. |
| Alaskan Falls Water Co. Ltd. | Groupe Seb USA | Penobscot Frozen Foods Inc. |
| Alberto Culver | Grunerd Jahr USA | Pentech |
| Alcon Laboratories Inc. | GSA | Peoriaplastics |
| Alexander Global Promotions | Gtt International Inc. | Pepsi Cola Btlg Co-Elmira |
| Alfresh Foods | Guiness Bass Imports | Pepsi North Country Vending |
| Allegany Beverage Corp. | Guttenplan's Bakery | Pepsico Foods Imports |
| Alleghany Pharmacal Corp. | Gwaltney Of Smithfield Ltd. | Pepsi-Cola Company |
| Allen Canning Co. | H C Brill Co. Inc. | Perfect Art |
| Allergan Inc. | H.T. Redemption Center | Perfection Bakeries, Inc. |
| Allied Domecq Wines USA | Hachette Inc. | Perfetti Van Melle USA |
| Allied Old English Inc. | Hain Celestiao Group | Performance Labs |
| Allied Supply Co. | Hamilton News Co Inc. | Performark, Inc. |
| Alliedinternati | Hanover Foods Corporation | Perio, Inc. |
| Alliedsales | Hansen's Natural Beverages | Perioproducts |
| Alltrista Consumer Products Co. | Happy Ice Corp. | Perkins Food |
| Alltrista Corp. | Harmonassociate | Perry's Ice Cream |
| Almaden Vineyards | Hartz Mountain Corp. | Personalcarepro |
| | Harvest Ventures, Inc. | Petals Distributing Company |
| Alsey/Emess Lighting | Harvest View Farm Market | Pezcandy |
| Altadis U.S.A. | Hasbro | Pharmacia & Upjohn |
| American Candy Mfg. | Hatfield Quality Meats Inc. | Pharmaton Natural Health |
| American Connoisseur | Health Care Products | Pharmavite Corporation |
| American Dairy Brands | Health Product Tech. | PHD |

| | | |
|---|---|---|
| American Food Group | Healthguard International, Inc. | Philadelphiache |
| American Licorice Co. | Health-Tech Inc. | Philip Morris Co. |
| American Media Inc. | Hebertcandies | Phillips Foods, Inc. |
| American Nutrition | Hedstrom | Physiciansformu |
| American Pie | Heinz Frozen Food Company | Pic Corp. |
| American Popcorn Co. | Heinz Pet Products Co. | Pictsweet Frozen Foods |
| American Sugar Refining Co. | Heinz USA | Pierre's |
| Americanimporti | Helenecurtis | Pik Nik Foods, USA |
| Americanitalian | Helman Group | Pilgrims Pride Corporation |
| Amerifit Nutrition | Heluva Good Cheese Inc. | Pinemountain |
| Amerisource Funding Inc. | Henkel Consumer Adhesives, Inc. | Pinnacle Foods Corp. |
| Ameriwood | Henny Penny Farms | Pinnakle/San Diego |
| Amurol Confections Co. | Herbert Stanley | Pioneer Flour Mills |
| Anchor Frozen Food Corp. | Heritage Consumer Products | Pjsquares |
| Anchor Home Products | Heritage Food Serv Equip. Inc. | Pl Developments |
| Anderson Bakery Co Inc. | Herky's Food Products Inc. | Plano Molding |
| Andersonpretzel | Herman Falter Packing Co. | Plattsburgh Dist Co Inc. |
| Andrew Jergens Co. | Hero Nutritional Products | Playtex |
| Andy's Salsa | Hershey Chocolate USA | Plbsports |
| Annie's Naturals | Hetty Fair | Pliant Solutions Corp. |
| Ansell Healthcare Products Inc. | Hickory Farms | Plochman Inc. |
| Ansellpersonalp | Hilco | Poblano Hot Sausage |
| Anthony Thomas Candy Company | Hill's Pet Nutrition | Polarindustries |
| Apothecary Products Inc. | Hillshirefarms | Polaroid Corporation |
| Apple & Eve, LLC | Hilltop Dairy Inc. | Pompeian Inc. |
| Applica Consumer Products Inc. | Himmel Hair Care | Pooley Inc. |
| Aquastar | Himmel Nutrition Inc. | Popcorn Board |
| Archabald Candy | Hines Horticulture Inc. | Poppe's Popcorn |
| Archway | Hit Entertainment | Portable Products Inc. |
| Archway Cookies, LLC | HMS Mfg. Co. | Portion Pac Inc. |
| Armkell, LLC | Hoffman Poultry Inc. | Potlatch Corp. |
| Armour Swift Eckrich | Hofmann Sausage Co. Inc. | Potter Inc. |
| Arrow Plastic Mfg. | Hogilpharmaceut | Powell |
| Arthritis Research | Holiday Housewares Inc. | Powerbarincorpo |
| Arthur R Gren Beer | Holland American Wafer | Prairie Farms |
| Asap Food Products | Holmesair | Preferred Brands |
| Asiana Cuisine Enterprise Inc. | Holmesproducts | Premierbeverage |
| Associated Milk Producers | Holyfamilychurch | Premio Foods |
| Associatedhygenicdrypers | Home Products International | Premium Beverage NA |
| AT&T Solutions | Home Styles | Prestige Brands International |
| Ateeco Inc. | Homedics | Prestigeglobal |
| Athens Pastry & Frozen Fds Inc. | Homemade Brand Foods Inc. | Primedia |
| Atkins Nutritional | Homestat Farm | Princess International |
| Atlantis | Homz | Procter & Gamble |
| Audio Video Rack Services | Honeydewcanada | Procter & Gamble Distributing |
| Aunt Della's Cookie Corp. | Honeymoon Paper Products | Proctorsilex |
| Aunt Molly's Popcorn Co. | Hoover | Productos Alimentioios La Mod. |
| Aurora Foods Inc. | Hormel Financial Services | Profoot Foot Care Products |
| Authentic Specialty Foods | Hot Mama Foods Inc. | Programmed Products Corp. |
| Avalon Beverage Co. | House Foods America Corp. | Progress Supply Inc. |
| Avery Dennison Office Prod Inc. | Howard Foods, Inc. | Progressive Inc. |
| Axis Import Export Corp. | HP Hood Inc. | Promo Works |
| B & B Supplies | HPF LLC | Promotion In Motion |
| B & G Foods Incorporated | HSM Of America LLC | Promotions Unlimited Corp. |
| B. E. Wright Distributing, Corp. | Huffman Hosiery | Psccreditunion |
| B.F. Ascher & Company Inc. | Huhtamaki Food Service, Inc. | PTS Labs |
| Bagels Forever Inc. | Huish Detergents Inc. | Pulse Nutrition Solutions Inc. |
| Bake Shop Bread | Hunter | Pumpkin Masters |
| Bakemark | Huntwesson | Purdue |
| Bakersdozen | Hussmann Corp-Chicago | Pure Lip Inc. |

| | | |
|---|---|---|
| Baldwin Richardson Foods Corp. | Icco-Cheese Co Inc. | Purely Supreme Foods |
| Ball Alltrista | Icicle Seafood | Pw Vinters/Lindeman |
| Ballard Farm Sausage | Idaho Fresh Pak | Quaker Foods & Beverages |
| Barber Foods | Idelle Labs - Ltd. | Qualex Inc. |
| Barilla America Inc. | IDMG | Quality Baking |
| Baron Corp | Idmg | Quality Farms Inc. |
| Bar-S Foods Co. | Imperialtoy | Qualityking |
| Bartyzel Food Supply Inc. | Implus Corp. | Quickie Mfg Corp. |
| Batavia Wine Cella | Implus Footcare LLC | Quickie Mops And Brooms |
| Baumer Foods Inc. | Indiana Glass | Quigley |
| Bausch + Lomb | Initial Brands Inc. | Quigley Corp. |
| Baxter Healthcare | Inline Plastics Corp. | R J Reynolds Tobacco Co. |
| Bayer Corporation – Healthcare | Inliten LLC | R.L. Zeigler Company, Inc. |
| BCM Sales | Innovamarketing | Rainbow Linens |
| Beaumont Products, Inc. | Innovative Promotions | Ralda Investments, LLC |
| Bectondickinson | Innovative Publishing | Ralston Foods Inc. |
| Beech Nut Nutrition Corp. | Insigniasystems | Ramseypopcorn |
| Beef Coupon | Integrated Brands Inc. | Randall Food Products Inc. |
| Beef International Inc. | Inter - American Foods, Inc. | Random House |
| Beiersdorf Inc. | Inter Pacific Corp. | Rangekleen |
| Bel/Kaukauna USA | Inter-American Foods, Inc. | Ray O Vac Corporation |
| Belgo Quebec Inc. | Intercraft Ind Corp. | Rayovac |
| Bell Carter Foods Inc. | Interdesign Inc. | Ray's New York Bagels |
| Benjaminmedwin | International Baking | Readi-Bake |
| Benjerrysicecre | International Multifoods | Reames Foods Inc. |
| Bennett Mineral Company | International Silver Co. | Reckitt Benckiser |
| Benzel's Bakery Inc. | Internationalmu | Red Gold Inc. |
| Benzels Food Distributor - DSD | Interstate Brands Cake # 58 | Redco |
| Beringer Wine Estates | Interstate Brands Corp. | Redox Brands Inc. |
| Berks Packing Co. | Interstate Promotions, Inc. | Redtagbiz, Inc. |
| Berner Foods Inc. | Inverness Medical Inc. | Reily Foods Company |
| Bertolliusa | Ironstone Vineyards | Reilyfoods |
| Best Brands Corp. | Irving Tissue Inc. | Reiter Dairy |
| Bestsweet Inc. | Italianvillagep | Rembrandt Corp. |
| Beverage Specialties | Italpasta Limited | Republic Tobacco |
| Bic Corporation | Ivexpackagingto | Revlon Inc. |
| Bickel's Snack Foods, Inc. | J & B Group | Rex Imports |
| Big Red | J. M. Smucker Co Llc | Rexall Sundown, Inc. |
| Bijiou International Corp. | J.V. General Cleaning Service | Reynolds Metals Co. |
| Bilinski Sausage | J+J Snack Foods Corp. | Rhodes International |
| Bil-Jac | Jack Guttman, Inc. | Ribs King Inc. |
| Binney & Smith Inc. | Jack Of All Games | Rich Products Corp. |
| Biocosmetic Research | Jacklinkssnacks | Richardsonbrand |
| Bio-Logic Aqua Tec | James Austin Company | Richs |
| Birds Eye Foods, Inc. | James P Linette Inc. | Rich-Seapak Corp. |
| Bison Foods Co. | Jans Inc. | Ricola USA Inc. |
| Bleyer Industries | Jaretinternatio | Riponfoods |
| Blistex Inc. | Ja-Ru, Inc. | Risers Corporation |
| Blockdrug | Jason Natural Cosmetics | Ritchey Produce |
| Blue Diamond Growers | Jasper Products, Llc | Rite Aid Chromatics |
| Blue Sky Marketing Inc. | Jasper Wyman & Son | Rite Aid Corporation |
| Bluediamond | Jay Sea Beer Co | Ritefoods |
| BMK, Inc. | Jbwilliams | Ritviktoy |
| Bobs Lawn Care & Landscaping | Jelmar | Rivasports |
| Bob's Red Mill Food | Jelsert Company | River Valley Foods |
| Body Care Group, Inc. | Jim Belzak | Riviana Foods |
| Bongraincheeseu | Jmc Impact, Inc. | RM Palmer Co. |
| Bonne Bell Inc. | Joe Meat | Roaring Spring Bottling Co. |
| Boot's Healthcare | Johanna Foods Inc. | Rob Salamida Co. |
| Borden Foods Inc. | John B Sanfilippo And Son Inc. | Robert Mondavi |

3

| | | |
|---|---|---|
| Bornell Supply Company | John Becker | Robert Or Diane Tedd |
| Bosco | John Frieda Hair Care | Rocco J Testani Inc. |
| Boyd Flotation | John G. Ryan Inc. - Beer Dist. | Rodlen Labs |
| Boyer Candy Company Inc. | John Middleton Inc. | Roger Helmick |
| Brach & Brock | John Zidian Brokerage Company | Rolling Hills Candle Company |
| Brady Enterprises | John Zidian Co., Inc. | Rosemount Estate Winery |
| Brakebush Brothers | Johnnie Ryan Co. Inc. | Rosina Food Products |
| Braunince | Johnson & Johnson Sales & Logistic | Ross Products Division |
| Breath Asure Inc. | Johnson Diversey | Roth Kase Ltd USA |
| Bremner Inc. | Johnsonville Foods Co. Inc. | Rotolo Foods LLC |
| Bristol-Myers Products Company | Johnstone Supply | Round Hill Vinyards |
| Brite Star Manufacturing Co. | Johnthomasfurni | Royal Appliance Mfg. Co. |
| Brookfield Farms | Jolen Inc. | Royal Consumer Info. Products |
| Broughton Foods Co. | Jonel A Div Of Am Cosmetics | Royal Lace |
| Brown & Williamson Tobacco Co. | Jones Dairy Farm | Royal Oak Sales Inc. |
| Brown Paper Goods Company | Jose Madrid | Royce Union Bicycle Co. |
| Bruce Foods Corporation | Joy Cone Co. | Rubbermaidhomep |
| Buckeye Distributing | JP Products L.C. | Run-A-Ton Group Inc. |
| Budd Foodsinc. | Judith Gilmore | Russell Stover Candies |
| Buena Vista Home Video | Juniata Packing Co. | Russellstoverca |
| Buffalo Beverage Corp. | Just Knits, Inc. | Russer Foods |
| Bumble Bee Seafoods, Inc. | Justborn | Russer Foods Co |
| Bunzl Distribution Northeast | Kal Kan Foods Inc. | Rutland Herald |
| Burlington Basket Company | Kal Kreations | Ryco |
| Burns Int'l Security Services | Kash N Gold Ltd. | S & B International |
| Bush Brothers & Co. | Kashi Company | S & G |
| Bushindustries | Kayem Foods Incorporated | S C Johnson & Son Inc. |
| C & S Wholesale Grocers Inc. | Kayser Roth Corp. | S.T. Specialty Foods, Inc. |
| C&S Delivery Inc. | Kaz Inc. | Safeway Corporate Brands |
| C. B.Fleet Company Inc. | Keebler Company | Saffire Gasuik Saffire |
| C. F. Burger Creamery | Kellogg Sales Co. | Sahlen Packing Co. Inc. |
| Cabot Creamery Cooperative | Kemps Foods LLC | Sakol |
| Cabrada Nutrition | Ken's Foods Inc. | Salamanca Beverage Co. |
| Cadbury Schweppes Amer. Bev. | Keystonepretzel | Salerno Delicious Brands |
| Cafe Bustelo | KGM Industry | Salov N/A Filippo Berio |
| Cains | Kikkoman Intern Inc. | Salton |
| Cains Pickles | Kimberly-Clark Corp. | San J International |
| Calgon | King Arthur | Sanchristerlis Distr. |
| Calgon Corbon Corp. | King's Hawaiian Bakery West Inc. | Sandridge Food Corporation |
| California Dried Plum | Kirin Irc - '99 | Sandusky Distributing Company |
| California Milk Advisory | Knauss Dried Beef Company | Sanfilippo |
| Camellia Gen Provision Co. | Knouse Foods | Sanford LP |
| Camillus Business Forms Inc. | Kobayashi | Santa's Best |
| Camino Real Foods | Kobayaski Healthcare | Sanzone Dist Co Inc. |
| Campbell Sales Company | Kozy Shack Enterprises, Inc. | Saputo |
| Canbra Foods Ltd. | Kraft General Foods | Saputo Cheese USA |
| Canbrands Coupon | Krema Group Limited | Sara Lee Coffee & Tea |
| Candle-Lite | Krispy Kreme Doughnut Corp. | Sara Lee Frozen Division |
| Cappione A Inc. | Kroger | Sara Lee Household & Body Care |
| Caravan Products Co. Inc. | Kunzler And Company Inc. | Sara Lee Us Foods |
| Carbolite | L & M Inc / Chefs | Sargento Foods Inc. |
| Cargill | L & N Sales And Marketing Inc. | SAS Group |
| Cargill Inc - Poultry Division | L&P Financial Services | Sassy Inc. |
| Cargill Inc- Salt Division | L. Powell Company | Sau Sea Foods Inc. |
| Carl Estshman Co., Inc. | La Rosa | Sauza Coupon Offer |
| Carlton Cards | Ladies Home Journal | Sc Johnson & Son Inc. |
| Carolinacpnclea | Lake Beverage Corp. | Schering Plough Healthcare Inc. |
| Carolinacpnclearing | Lakeport Distributors | Schmidproducts |
| Carriage House | Lakeview Farms Inc. | Schneider's Dairy Inc. |
| Carter-Wallace Inc. | Lamagna Cheese Company Inc. | Schoenberg Salt & Chemical |

4

| | | |
|---|---|---|
| Carthage Corp. | Lamaur | Schulze And Burch Biscuit |
| Casa Visco | Lancaster Eagle Gazette | Schwan's Consumer Brands NA, Inc. |
| Castle Brands Inc. | Land O Lakes Inc. | Schwansconsumerbrands |
| Castleberry's Food Company | Land O'Frost | Schwarzkopf & Dep Corporation |
| Casual Gourmet | Lander | Schweigert Foods |
| Cavallaro Specialty Foods | Lane Limited | Sci Tech Labs Inc. |
| Cbrichardellis | Langer Juice Co. | Scotts Company |
| CCA Industries | Langer Juice Co. | Scottsliquidgol |
| CCDA Waters, LLC | Langley Products | Seafood Enterprises Inc. |
| Cecchetti Sebastiani Cellars | Lasonic | Season Products Corp. |
| Cecil Saydah Corp. | Laubscher Cheese Co Inc. | Seasonal Designs |
| Cedecandy | Laura's Lean Beef Company | Seatle Coffee Company |
| Celentanobros | Lavita | Seneca Beverage Corp. |
| Celltech Pharmaceuticals, Inc. | Lea + Perrins Inc. | Seneca Foods Corp. |
| Cellular World | Leaperrins | Serac LLC |
| Centis | Lectec Corporation | Sergeants Pet Products |
| Central Beverage | Ledbetter Packing Co. | Servaas Laboratories |
| Century Furniture Ind. Co., Ltd. | Ledysan USA Inc. | Seven-Up Canada Dry |
| Certo Bros Dist Co. | Lee Pharmaceuticals | Seven-Up Company-Berwick |
| Ch Robinson | Leepharmaceutic | Shamrock Foods Co.-Dairy Div |
| Chain Reaction | Lee-Thompson-Fawcett | Sheaffer Pen |
| Champion Sales & Marketing | Leggs Products | Sheridan Distributing |
| Changing Paradigm | Lego | Sherwin-Williams |
| Char-Broil | Leiner Health Products | Sherwood Brands, Inc. |
| Charles Leonard, Inc. | Leland Jewell | Sherwood Food Distributors |
| Chattem Inc. | Lenatureswater | Shoppers Hotline |
| Chef Solutions Inc. | Lew-Mark Baking Co. | Siege Chemical Company |
| Chefamerica | LGS | Signature Brands LLC |
| Chelsea Milling Co. | Libbey Glass Inc. | Signature Fruit |
| Chempro | Liberty Gold Fruit Co Inc. | Significant Snack LLC |
| Chenangovalleyp | Liberty Richter Incorporated | Silhouette Brands |
| Cherryland Beverages, Inc. | Licentia | Silver Goose Accessories |
| Chesebroughpond | Liddell | Silver Palate Kitchen's |
| Chiavetta's Catering | Lidestri Foods, Inc. | Similason Corp. |
| Chiquita Processed Foods, Llc | Lifescan Inc. | Simmons Foods |
| Chiquitabrands | Lifestream Technologies | Simplylitefoods |
| Christie Food Products, Inc. | Lifetime Hoan Products | Sioux Honey Association |
| Chung's Gourmet Foods | Lifeworks LLC | Slim Fast Foods Company |
| Chupa Chups USA | Lifoam Nanuf | Smithfield Packing Co. Inc. |
| Church And Dwight Co. Inc. | Lift Truck Motors Inc. | Smithkleinbeech |
| Churchdwight | Liggett Vector Brands Inc. | Snapple Dist., Inc. |
| Cibavision | Lightning Bug | Snapplebeverage |
| Citgo Petroleum Corp. | Lil Drug Store | Snow Ball Foods, Llc |
| Clabbergirlbaki | Lime-O-Sol Company | So - Be Refreshments |
| Clairol | Lincoln Snacks Company | Sokol |
| Class Act Delivery Inc. | Lindsey Foods Ltd. | Solo Cup Co. |
| Clearlycanadian | Linette Quality Chocolates | Some Kind Of Wonderful Food Co. |
| Clorox Co. | Linonshomedecor | Sony |
| Cm Products, Inc. | Linsey Foods Ltd. | Sony Corporation Of America |
| Coca Cola Bottling Co Consol | Litehouse Dressing | Sophiemaeedi |
| Coca Cola Btl Of Ne | Little Crow Foods | Sorrento Lactalis Company |
| Coca-Cola Bottling Co-Egl | Lobster Trap Company | Southern Container Corp. |
| Colavita USA | Locin Industrie Limited | Southern Fresh Foods |
| Cold Hollow Cider Mill | Lofthouse Foods | Southern Sales & Market Group |
| Coleman Company Inc. | Longos Bakery | Southern Tier News Co. |
| Colgate Palmolive Co. | Loreal Hair Care Div. | Southern Tropicals Inc. |
| Colgatetoiletri | Lorillard | Southernseafood |
| Colgin Incorporated | Lorillardtobacc | Specialty Brands Inc. |
| Collarini's Pasta Products | Louis Maull Co. | Specialty Brands Of America |
| Collegeville Imagineering | Louis Trauth Dairy | Specialty Foods Group, Inc. |

Doc #:NY6:874288.7

| | | |
|---|---|---|
| Columbia Empire Farms | Louisana Purchase | Spectrum |
| Combe Inc. | Lozier Corporation | Spectrum Brands |
| Comfort Bay Foods | Lucy Foods | Spic And Span Company |
| Comfort Foods Inc. | Luden | Spice Market Inc. |
| Commerce Corporation | Luiginos Inc. | Sportpharma |
| Commonwealth Brands Inc. | Lulu's Dessert | Starkistfoods |
| Commonwealthofp | Lumisource | Stateofohio |
| Conagra | Lundberg Family Farms | Steak-Umm Company, Inc. |
| Conagra Dairy Foods Company | LW Randles | Stella Pharmacuetical |
| Conagra Flour Milling | M & M Mars | Sterilite Corp. |
| Conagra Foods Refrigerated Food | M & M Watch Co. | Sterling |
| Conagra Frozen Foods | M. A. Gedney Company | Sterling USA |
| Conagra Snack Foods Group | Maab | Sterling Vineyards |
| Conagrapets | Macadamia Nut | Stock Yards Meat Packing Co. |
| Conair Corp. | Mack Blevins Enterprises LLC | Stonehedge Farms |
| Connors Brunswick, Inc. | Mackblevinsent | Storck USA-LP |
| Conros Corporation | Magla Products | Strahler's Foods Inc. |
| Consumer Guild Foods Inc. | Magnetic Springs Water Co. | Straight Arrow |
| Contac Lens Supply | Malco Products Inc. | Stravina |
| Contessa Party Platter | Mali's All Natural | Stretch Island Fruit Inc. |
| Continental Commercial Product | Malt-O-Meal Co. | Strickler Ice |
| Continental Fragrances, Ltd. | Mama Rosies | Stroehmann Bakeries |
| Convenience Kits Intl. | Manischewitz | Strom Products Ltd. |
| Conwood Sales Company, L.P. | Mann Packing Co Inc. | Sugardale Foodfresh Mark Inc. |
| Coors Brewing Company | Maple Grove Floral Wholesale | Sun & Earth Inc. |
| Corning Consumer Product | Maple Leaf Bakery Inc. | Sun Look, Inc. |
| Cosco | Maple Leaf Farms, Inc. | Sunbeam Corporation |
| Cosmetic Promotion | Maplehurst | Sunflowergroup |
| Cosrich, A Division Of PMC, Inc. | Marbo Inc. | Sunmaid Growers Of California |
| Cott Beverages Wyomissing Inc. | Marcal Paper Mills Inc. | Sunpacificenter |
| Coty | Margaritaville Food Prod. | Sunshinemills |
| Coty Us LLC | Marie Callender's | Sunsplash |
| Country Gourmet Food | Maries Quality Foods | Sunstar Butler |
| Creative Bath Products | Marilyn Henry Or Selim Serry | Sunsweet Grower |
| Creative Laboratories | Martek Biosciences | Superiors Brand Meats |
| Creative Marketing | Martinelli's Sparkling | Supermarketing Promotions |
| Crossmark | Maruchan Inc. | Super-Max Corporation |
| Crowley Foods Inc. | Marzettit | Supervalu Holdings, Inc. |
| Crystalclear | MAS | Sure Fit Incorporated |
| CSC Brands LP | Mas & Fils Jardiniers Ltee | Sure Trim Labs |
| Cuddletown | Mashallanproduc | Suretrack Melt Inc. |
| Cuisine De France Inc. | Massconnections | Surgical Appliance Industries |
| Culinary Standards, Inc. | Master Wholesale Inc. | Susquehanna Candle |
| Cumberland Pkg Corp. | Mastercard International | Sweetsuekitchen |
| Custom Quest | Matlaw's Food Products | Swisher International Inc. |
| Cycle Group, Inc. | Mauna Loa Macadamia Nut | Sylvania |
| D H Associates | Maxell Corporation Of America | Syroco Fiskars |
| D.L. Peterson Trust | Maybelline | Sysco Food Services-Syracuse |
| Dads | Maybellinesales | T Marzetti Company |
| Daewoo Electronics Corp Of Am. | Mayer Bros. | Tab Consulting |
| Dairy Fresh Foods | Mayfair Sales Inc. | Table Tops Unlimited |
| Daisy Brand Inc. | Mc Cain Foods Inc. | Tabletops |
| Dakota Pork Industries | Mccadam Cheese | Taro Pharmaceuticals |
| Dan Carter Inc. | Mccall Farms Inc. | Taylor Packing Co. Inc. |
| Dan River Inc. | McCormick US Consumer Products | Technibilt Tm Ltd Inc. |
| Dannon Co Inc. | Mcculloch Motors Inc. | Telecomproducti |
| Danone Waters Of N. America | Mcilhenny Co. | Teledex Inc. |
| Daymon Associates | Mckee Baking Co. | Temparin Offer |
| Dayton Health | Mckeon Products | Tennessee Pride |
| Dean Foods Co. | Mcnamara Dairy | Terry King |

Doc #:NY6:874288.7

| Dean Specialty | Mcneil Consumer Products | Tetley USA, Inc. |
|---|---|---|
| Del Grosso Food Inc. | Mcneil Specialty Products | Tewnutritional |
| Del Laboratories Inc. | Mds Foods | Texas Instruments Inc. |
| Del Monte Foods | Mead Johnson Nutritional | T-Fal Corporation |
| Del Pharmaceuticals | Mead Westvaco | Thai Kitchen/Epicurean |
| Delallo Inc. | Meco | The Becoming Co. |
| Delallo's | Media Recovery, Inc. | The Brulin Corporation |
| Delimex | Media Syndication | The Depository Trust Company |
| Delta Carbona LP | Medtech Products, Inc. | The Evercare Company |
| Delval Equipment Corporation | Melitta USA Inc. | The Great Fish Co., Llc |
| Dena Corporation | Mentholatum Co. | The Hain Celestial Group, Inc. |
| Dennisonmfg | Meow Mix | The Herbert Stanley Co., LLC |
| Dentek Oral Care, Inc. | Merisant | The Holmes Group |
| Desert Glory | Merz Pharmaceuticals | The News Group |
| Dewar's Distillery | Met Rx | The Sentinal |
| Diageo | Metabolife International, Inc. | The White Rain Company |
| Dial Corporation | Method Home Care | The Yofarm Company |
| Diamond Dist Inc. | Metrobeverage | Theme Co-Op Promotions |
| Diamond Of California | Mexamerica Foods | Thomasville Furniture Industri |
| Dimpflmeier Bakery Ltd. | Mexican Accent, Inc. | Thornapplevalle |
| Dishwasher Magic | MFM Industries | Three M 3m Pbc1590 (Nc) |
| Distributionser | Michael Angelo's | Threem |
| Dix Preventive Products Inc. | Michael Foods Inc. | Tillamook Dist. Company |
| Dixie Crystal | Michaelfoods | TJ Sheehan Dist. Inc. |
| Doanepet | Mickel Silvis | Tnt Fireworks/American Promo |
| Doldo Bros. | Midstate Bakery Dist. Inc. | Toastmasteredis |
| Dole Fresh Fruit Company | Midstate Mills | Tofutti |
| Dole Fresh Vegetables Inc. | Midwest Seafood Inc. | Tombstone Pizza Corp. |
| Dole Packaged Foods | Miguels Stowe Away | Tones Brothers Inc. |
| Dominion Hope | Mike-Sells Potato Chip Co. | Tony Packo Food Co. |
| Don Miguel Mexican Foods Inc. | Milkco, Inc. | Tootsie Roll Div/Tri Sales Co. |
| Double-Cola Co-USA | Millbrook Distribution Service | Topco Associates Inc. |
| Driscoll Strawberry Assoc. | Miller Brewing | Topps Company Inc. |
| Dry Inc. | Milnot | Traditional Medicinal |
| Dsl.Net Inc. | Mincolla A V Dist Co. | Trans-Ocean Products, Inc. |
| Dubois Area Catholic Schools | Miner Group | Traulsen |
| Duraflame | Minute Maid Company | Travelers Club Luggage |
| Durkee Mower Co. | Mirro Company | Treasure Valley Sales & Martg |
| Duro Bag Mfg Co. | Miss Meringue | Trigg Laboratories, Inc. |
| Duropaperbagmfg | Missert A J Inc. | Trinchero Family Est |
| Dutch Kettle | Mission Foods Jefferson | Trinitypaperpla |
| Dutch Maid Bakery Inc. | Mitsui Foods Inc. | Tri-State Pallet |
| Dynamite Disposal | Modern Products | Tri-Valley Beverage Inc. |
| E & J Gallo | Trident Seafoods Corp. | Tropicana |
| E.E. Dickinson | Mohawk Home | Trudeau |
| E.W. Grobbel Sons, Inc. | Monroe Bottling Inc. | Trudeauincorper |
| Eagle Beverage Co. | Montana Mills Bread | Try It Distributing Co. Inc. |
| Eagle Family Foods Inc. | Monterey Pasta Company | Turkey Hill Dairy Inc. |
| Earthgrains Co Ref. Dough Prod. | Monticello Drug Company | Turtle Mountain, Inc. |
| EAS | Morningstar | Tyler Parts Dist. Center |
| East Coast Olive Oil Corp. | Morrone Company | Tyson Foods Inc. |
| Eastman Kodak Company | Morton Manufacturing&Trade Inc. | U.S. Cotton LLC |
| Eastmankodak | Morton Salt | U.S. Foodservice |
| Ecce Panis | Mottsusa | Udv/West |
| Econo Chem | Mountain States Rosen, Llc | UFCW Local 1 |
| Economy Locker Storage Co. Inc. | Mountaire Farms | UFCW Local One |
| Edwards Fine Foods, Inc. | Mr. Coffee | Ultra Distributors |
| Edwards Pie | Mrs. Cubbison's Foods | Uncle Bens Inc. |
| Edy's Grand Ice Cream | Mt. Olive Pickle Company Inc. | Uncle Wally's, Inc. |
| Egames Co. | Multifoods US Consumer Prod Di | Uni Ball Bts LRC |

7

| | | |
|---|---|---|
| Eight O'Clock Coffee | Murdock Madaus Schwabe | Unilever Best Foods |
| EJ Gallo | Musco Family Olive Co. | Unilever/Home & Personal Care |
| Ekcohousewares | Mw Polar Foods | Unipath Diagnostics Co. |
| Elm Hill Meats | Mystic | United Dairy, Inc. |
| Elmer's Products Inc. | Nabisco Brands-DSD Only | United Industrial Workers |
| Elwood W Harper Distr. | Nabisco Inc. | United Pacific Textiles |
| Emmett D. Kinney Jr. | Nancy's Pies, Inc. | Unitedstatespla |
| Empire Candle | Nancy's Specialty Foods | Universal Group |
| Empire Kosher Poultry Inc. | Napa Valley Kitchens | Universal Products |
| Empirestatevent | Narita Trading Co. Inc. | Universal Studies |
| Emruss | Nasoya | Universal Studios |
| Emson | National Chicken Council | University Blanket & Flag Co. |
| Endar | National Fruit Products | UPS |
| Energizer Battery | National Pork Board | Us Foodservice, Inc. |
| Englewood Appliance Co., Inc. | National Realty | US Mills, Inc. |
| Englewoodsales | National Tobacco Company L.P. | US Playing Cards Company |
| Epocal Balla | National Turkey Federation | US Smokeless Tobacco Brand, Inc. |
| ET Browne Drug Co., Inc. | Natural Selection Foods | USA Detergent Inc. |
| Ethnic Gourmet Foods | Naturally Potatoes | Ustobacco |
| Eureka Company | Nature's Bounty, Inc. | Valenty Bottled Water, Inc. |
| Euro Foods Concepts Inc. | Natures Cure | Valley Fresh Inc. |
| Evenfloinc | Nature's Earth Products, Inc. | Valley National Gases Inc. |
| Everson Spice Co., Inc. | Nature's Path Foods, Inc. | Valleydale Foods |
| F & T Distrubution Co. Inc. | Naturopathic Labs | Vancamp Seafood |
| F. Gavina & Sons | Navajo Manufacturing Co. | Vandekamps |
| F. M. Brown's Sons Inc. | NDL Products Inc. | Vaporeze |
| Fairbank Reconstruction Corp. | Necco | Vector Tobacco |
| Fanshot Products LLC | Neoteric Cosmetics Inc. | Velvet Ice Cream Co. |
| Fantasia | Nepco | Venango Newspapers |
| Fantasia Fresh Juice Co. | Nestle | Venicemaidfoods |
| Farmland Foods Inc. | Nestle Purina Pet Care Company | Ventrepacking |
| Farnam Companies Inc. | Nestle USA Inc. | Verizon Wireless |
| Father Sam's Syrian Bread | Nestle Waters Canada | Vermont Standard Inc. |
| Faulding Consumer Co. | Nestle Waters North America, Inc. | Veryfine Products Inc. |
| Faygo Beverages Inc. | Neutrogena Corp. | Vicen Nutritional |
| FBL Redemption | New Hampshire Wic Program | Victoriavogue |
| Fed Ex Trade Networks | New World Pasta | Victus, Inc. |
| Ferolito Vultaggio & Sons | New York Frozen Foods Inc. | Vidal Sassoon |
| Ferrania USA Inc. | Newell Company | Vieira's Breads Inc. |
| Ferrara Pan Candy Co. Inc. | Newell-Rubbermaid Inc. | Vietti |
| Ferrero USA Inc. | Newman's Own Inc. | Viking Seafoods Inc. |
| Fieldcrest Cannon Inc. | Nextex Inc. | Villa Maria Products |
| Finger Lakes Bottling | NFI Dietary Supplements | Vineyard Brands |
| Finger Lakes Dist. | Nice-Pak | Vintage New World |
| Finked65 | Nicola | VIP International |
| First Years Inc. | Night Hawk Frozen Fd | Virbac Corporation |
| Firstalert | NK Hurst | Vision Specialty Foods |
| Flame Trading Company | Nk Lawn + Garden | Vitasoy Usa Inc. |
| Fleischmann's Yeast | No Pudge Foods | Vitelli Foods LLC |
| Flexon Undustries | Noble Worldwide | Vogue International |
| Florida's Natural Growers | Nonni's Foods, Inc. | W.E. Bassett Co. |
| Flowers Coupon Redemption | Noonhour Food Products | Wahl Clipper Corp. |
| Flowers Foods Specialty Group | Norbevedi | Wallingford Coffee Mills |
| Flying Colors | Norelcoconsumer | Walnut Creek Foods |
| Fondagroup | Norseman Plastics | Walnut Crest |
| Food Market Merch Inc. | North American Oil Company | Warner Lambert Company |
| Foreign Candy Company Inc. | Northeastern Products | Warner Vision |
| Fort James | Northern Eagle Beverage | Wd-40 Company |
| Four C Foods Corp. | Northland Cranberries, Inc. | Weatherworks Inc. |
| Four Seasons Sales | Nortz Lowville Dist Coinc | Weaver Brothers |

| | | |
|---|---|---|
| Fox Video | Novartis Consumer Health, Inc. | Weetabix Company |
| Fr Lepage Bakery | Novartis Opthalmics | Weider Nutrition Group Inc. |
| Frangelico Refund | Novogen | Weil's Food Processing |
| Frankford Candy + Choc Co | Novus Consumer Awareness | Welch Foods Inc. |
| Franklin Foods/All Seasons | Npb Coupon | Wells Dairy Inc. |
| Franklin Trade Graphics | Ntc Marketing, Inc. | Westernpublishi |
| Frans Healthy Helpings | Ntcmarketing | Westim Inc. |
| Free Free USA Inc. | Nu Products Seasoning Co. | Westrick Paper Co. |
| Freezer Queen Foods Inc. | Nutrition Fitness | Weyerhaeuser |
| Fresh Gourmet | Nutro Products | Whink Products Co. |
| Fresh Starts | Nuvim Inc/Royal Dairy | White Cap Inc. |
| Fresh Starts Etc Inc. | Nve Pharmaceuticals, Inc. | White Castle Dist Inc. |
| Fried Provision Co. | Ny Notion & Craft Supply | White Clover Dairy |
| Friendly Ice Cream Corp. | Nynotions | White Wave, Inc. |
| Friendship Dairies | Oakhurst Dairy | Whiting Mfg |
| Front End Marketing Specialist | Oberto Sausage Company | Wiffleball |
| Frozen Specialties Inc. | Ocean Spray Cranberries | Willert Home Products Inc. |
| Fruit Of The Loom | Odom Tenn Pride Sausage | Willowbrook Farms |
| Ftd-Florists Transworld Deliv. | Odom's Tennessee Pride | Wilton Industries Inc. |
| Fuji Photo Film USA, Inc. | Oetker, Inc. | Wireless Xcessories Group Inc. |
| Fujifilmgreeson | Ohio Packing Co. | Wisconsin Pharmacal |
| Funai Corporation | Oil-Dri | Wise Consumer Products |
| Fundex Game Limited | Okamoto USA | Wise Foods (P&C And Quality) |
| Furman Foods Inc. | Old London Foods Inc. | Wjordancereals |
| Future Brands LLC | Old Orchard Brands LLC | Wm Wrigley Jr. Co. |
| G & J Pepsi Cola Bottlers Inc. | Old Original Book Binder | Wolfe News Service |
| G.P.G | Olivio Premium Products Inc. | Wood Chuck Draft Cider |
| Galileo Foods | On-Cor Frozen Foods Inc. | Woodstock |
| Galliker Dairy Company | One Way Records, Inc. | Woodstock Natural Products Inc. |
| Garber Farms | Oneida Silversmiths | World Finer Foods |
| Gardenersdeligh | Onondaga Beverage Corp. | World Kitchen, Inc. |
| Garelick Farms Of New York | Ontel Products AKA | Wow! Laboratories |
| Garnier | Oralblaboratori | WP Signs |
| Gasparini Sales Inc. | Orange Glo International Inc. | Wrigley Health Care Sales |
| General Electric Company | Orange Sol | Wrigley Sales Company |
| General Mills Finance, Inc. | Oregon Cherry Growers | Wusthot |
| Genisoy | Oregon Fruit Products | Wyeth Consumer Healthcare |
| George Bentges Dist. | Organic Valley Corporation | Wyeth Pharmaceuticals |
| George E Delallo Co Inc. | Organize It All | Xerox Corporation |
| George J. Howe Company | Orlando Baking Company | X-Tra Touch |
| George Stambaugh | O'Sullivan Industries Inc. | Yaw Oil Co Inc. |
| Georgia-Pacific Corporation | Out International | Yorksnacks |
| Gerber Products Co. | Owasco Beverage Inc. | Zachary Confections Inc. |
| Gerrit J Verburg Co. | Owd | Zacky Farms |
| GFA Brands | Owens Sausage Co. | Zak Designs |
| Ghirardelli Chocolate | P&C Produce EE | Zatarains |
| Ghirardelli Chocolate | P.W. Vinters/Lindman | Zicam, LLC |
| Gibson Overseas, Inc. | P+Cempfederalcreditunion | Zick's Specialty Meats |
| Gilardifoods | Pacific Beverages | Zippo Manufacturing Co. |
| Gillette Commercial Ops, NA | Pacific Wine Products | Zone Perfect |
| Gilster Mary Lee Corp. | Pacificworld | Zooth |
| Giorgio Foods Inc. | Pactiv Corp. | |

9